```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
ROBERT TOUSSIE,

                    Plaintiff,                                      **MEMORANDUM AND ORDER**
                                                                    14 CV 2705 (FB) (CLP)
        -against-

ALLSTATE INSURANCE COMPANY,
ALAN RODRIGUEZ INSURANCE AGENCY,
INC., and ALAN RODRIGUEZ,

                    Defendants.
------------------------------------------------------------ X
ROBERT TOUSSIE and LAURA TOUSSIE,

                    Plaintiffs,
                                                                    15 CV 5235 (ARR) (PK)
        -against-

ALLSTATE INSURANCE COMPANY,

                    Defendant.
------------------------------------------------------------ X
```

**POLLAK**, United States Magistrate Judge:

On April 30, 2014, plaintiff Robert Toussie commenced an action against Allstate Insurance Company ("Allstate" or the "defendant"), Alan Rodriguez Insurance Agency, Inc., George J. Schlott, Inc., Alan Rodriguez, and George Schlott (collectively, "defendants"), alleging that the defendants had improperly adjusted and mishandled his claims for damages caused to his property, located at 290 Exeter Street, Brooklyn, New York (the "Property"), as a result of Hurricane Sandy, in violation of an insurance contract between the parties (the "Flood Case").

On September 10, 2015, in a related action (the "Theft Case"), plaintiffs Robert Toussie and Laura Toussie alleged that Allstate improperly adjusted and mishandled plaintiffs' claims for losses incurred by plaintiffs when thieves allegedly vandalized their Property in the days

following Hurricane Sandy.

The Court held a telephone conference on October 3, 2017, at which the parties and the Court discussed the defendant's request to inspect certain premises and items at Christie's and Lockson's used by the plaintiffs. (See Minute Entry, Oct. 3, 2017). On October 17, 2017, plaintiffs' counsel filed a letter motion with the Court seeking a protective order and to quash defendant's subpoena, dated October 4, 2017, directed to Christie's Fine Art Storage Services ("Christie's"). (See Pls.' Letter Mot.[1] at 1-2).

Plaintiffs argue that the subpoena directed to Christie's is improper because the Court's Minute Entry indicated that "[d]efendant to issue subpoena to be so ordered" to obtain information from Christie's and Lockson's (see Minute Entry, Oct. 3, 2017), but defendant's counsel issued the subpoena himself. (See Pls.' Letter Mot. at 1-2). Plaintiffs also argue that the subpoena, which directs compliance by October 19, 2017 at 9:00 a.m., does not provide reasonable time for Christie's to comply to permit inspection. (Id. at 2). Finally, the plaintiffs submit that the subpoena is overly broad and "subjects Christie's and the Toussies to an undue and unreasonable burden pursuant to Federal Rule of Civil Procedure 45(d)." (Id.)

DISCUSSION

A.  **Defendant's Failure to Submit the Christie's Subpoena to the Court**

The Court's purpose in directing that defendant submit a subpoena to be "so ordered" was to remove all doubt about the necessity of compliance by making the subpoena an order of the

---

[1] Citations to "Pls.' Letter Mot." refer to plaintiffs' Letter Motion to Quash and for Protective Order, dated October 17, 2017.

Court. Such a procedure seems particularly well-suited to these two cases, which have been pending for years and in which discovery has progressed slowly. It is not a little ironic, then, that the procedure intended to expedite these matters prompted the plaintiffs to file a motion that once again throttles progress. The remedy is simple: the defendant is Ordered to submit its subpoena directed to Christie's as an attachment to a letter on ECF for the Court to "so order."[2]

**B.** **Plaintiffs' Other Objections to the Christie's Subpoena**

    1.    <u>Standing</u>

"A party ordinarily lacks standing to quash a subpoena directed at a nonparty unless the party is seeking to protect a personal privilege or right." <u>United States ex rel. Ortiz v. Mount Sinai Hosp.</u>, 169 F. Supp. 3d 538, 545 (S.D.N.Y. 2016) (quoting <u>Nova Prods., Inc. v. Kisma Video, Inc.</u>, 220 F.R.D. 238, 241 (S.D.N.Y. 2004)); <u>see also</u> <u>Langford v. Chrysler Motors Corp.</u>, 513 F.2d 1121, 1126 (2d Cir. 1975) (explaining that "[i]n the absence of a claim of privilege a party usually does not have standing to object to a subpoena directed to a non-party witness"). "[T]he claim of privilege or right must be personal to the movant, not to the non-party witness on whom the subpoena was served." <u>Samad Bros., Inc. v. Bokara Rug Co.</u>, 09 CV 5843, 2010 WL 5094344, at *2 (S.D.N.Y. Nov. 30, 2010). "[T]he party invoking a privilege bears the burden of establishing its applicability," and the "burden is a heavy one, because privileges are neither 'lightly created nor expansively construed.'" <u>In re Grand Jury Subpoenas Dated March 19, 2002 and August 2, 2002</u>, 318 F.3d 379, 384 (2d Cir. 2003) (quoting <u>United States v. Nixon</u>, 418 U.S.

---

[2] If defendant's counsel intend to subpoena Locksons, they should follow the same procedure.

583, 710 (1974)).

It follows as a straightforward application of these principles that the plaintiffs do not have standing to seek to quash the subpoena on the basis of the time by which Christie's must comply or the burden the subpoena might place on Christie's. Those are issues that do not implicate plaintiffs at all.

The only right or privilege that plaintiffs raise in their letter motion that could be personal to plaintiffs is their privacy interest in the storage space and any items contained therein. (See Pls.' Letter Mot. at 2). While plaintiffs may have standing, as a threshold matter, to challenge the non-party subpoena on the basis of their claimed right to privacy, the Court finds that plaintiffs have not carried their "heavy burden" of demonstrating that the subpoena should be quashed. See, e.g., de Venustas v. Venustas Int'l, LLC, No. 07 CV 4530, 2008 WL 619028, at *2 (S.D.N.Y. Mar. 5, 2008).

2. Right to Privacy

Apart from the fact that this Court has considered these arguments and twice ruled that an inspection is warranted, the plaintiffs contend that

> [t]he defendant can certainly not expect, and Christie's cannot be required to allow[,] Allstate at its whims[] to have access to personal property and other valuables belonging to the Toussies which have no bearing on the claims asserted by the Toussies herein. Such an inspection would be a clear invasion of their privacy. It [is] also my understanding from Mr. Toussie that Christie's is not in possession of any items relative to his theft claim.

(Pls.' Letter Mot. at 2). Plaintiffs' concerns are not tethered to the realities of these cases.

The defendant argues that an inspection is necessary because although the Toussies claim

4

to have lost everything when Hurricane Sandy struck, Allstate discovered evidence that strongly contradicts that account and which instead suggests "that a significant moving operation took place" at the plaintiffs' home. (Def.'s Letter[3] at 2). The defendant points to plaintiffs' evasive and inconsistent answers regarding (1) whether, when, and by whom items were boxed and moved from their home, and (2) the location of any such boxes during the course of this litigation. (Id. at 2-3). Thus, the defendant contends that "the contents of the 190 boxes moved" from the plaintiffs' home "at substantial expense are highly relevant," especially given that the description of the property that was moved "match[es] the description of both items at issue on this theft claim and items for which Allstate already made payment under the Toussies' fine arts rider." (Id. at 3). The defendant also suggests that an inspection might reveal whether and to what extent the Toussies may have violated their preservation obligations and spoliated evidence. (Id.)

As part of their claims against Allstate in this case, the plaintiffs allege that they "accumulated a wide array of personal property over the years – some of which is very valuable." (Am. Compl.[4] ¶ 11). They provide numerous examples of property they claim was destroyed as a result of Hurricane Sandy, including $350,000 in fine arts, two Rolls Royce vehicles, one Bentley, and various other items. (See, e.g., id. ¶ 26). The core of plaintiffs' claims is that they owned personal property that was covered by the Allstate theft policy and that such property was lost to them in a manner covered by the policy. Plaintiffs have thus put the existence and

---

[3] Citations to "Def.'s Letter" refers to Allstate Insurance Company's Letter Motion to Compel, filed on June 13, 2017, No. 15 CV 5235, ECF No. 94.

[4] Citations to "Am. Compl." refer to the plaintiff's Amended Complaint, filed on July 25, 2016, No. 15 CV 5235, ECF No. 48.

location of their personal property at issue by bringing suit. They may not contend that they suffered losses of personal property that Allstate is obligated to pay and simultaneously object on the basis of their privacy interests to Allstate's attempts to investigate that claim by determining whether the property was actually lost.

The Court is mindful of its obligation to control the course of discovery to "secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1. Given the delay engendered by the inconsistencies noted by the defendant, and because the issue of what property remains in the plaintiffs' possession and what property was lost during Hurricane Sandy is central to this litigation, the Court reaffirms its earlier rulings permitting an inspection of Christie's as described in Allstate's subpoena.

3. Relevance and Undue Burden

Despite their contention that the subpoena is overly broad, plaintiffs also contend that it imposes "an undue and unreasonable burden in having to determine which boxes, if any, Christie's may have in its possession that would be appropriately responsive to the subpoena in question and necessary to produce for purposes of the inspection." (Pls.' Letter Mot. at 2). What plaintiffs describe as an undue burden is actually the procedure required by Rule 34 of the Federal Rules of Civil Procedure, which allows a requesting party, such as the defendant, to describe a "category of items to be inspected," Fed. R. Civ. P. 34(b)(1)(A), and then requires the party receiving that request, such as the plaintiffs, to produce for inspection any responsive items, including "tangible things." Fed. R. Civ. P. 34(a)(1)(B).

Rule 34 speaks of items in the responding party's "possession, custody, or control." Fed.

R. Civ. P. 34(a)(1). "Documents are in a party's control when the party has the legal right, authority, or practical ability to obtain the documents." Leser v. U.S. Bank N.A., No. 09 CV 2362, 2010 WL 1945806, at *1 (E.D.N.Y. May 13, 2010) (collecting cases). It appears likely, then, that the boxes stored at Christie's actually are in the plaintiffs' possession, custody, or control and should have been disclosed and produced by the plaintiffs without the need for a subpoena directed to Christie's. Nonetheless, plaintiffs did not agree to produce the items or to allow inspection of the premises, but instead required the defendant to seek a subpoena directed to Christie's. Plaintiffs have thus disavowed that the storage units and boxes were in their possession, custody, or control, and they therefore seem to lack standing to challenge the subpoena directed to Christie's on the basis of the burden it might impose on them.

The Court has nevertheless considered plaintiffs' arguments regarding the burden imposed by the subpoena and rejects them. Given the plaintiffs' request for millions of dollars, the burden of this discovery request is properly borne by the plaintiffs. See Fed. R. Civ. P. 26(b)(1) (authorizing discovery that is "proportional to the needs of the case"); Uni-Systems LLC v. U.S. Tennis Ass'n, No. 17 CV 147, 2017 WL 4081904, at *6 (E.D.N.Y. Sept. 13, 2017) (explaining that "the importance of the discovery in resolving the issues" in the case is a key consideration in determining whether a discovery request is proportional).

The storage units are relevant to this litigation and the issue of whether items plaintiffs claim were lost actually remain in their possession. Plaintiffs effectively concede this point by arguing that they would need to determine which of the boxes in the storage units are responsive to the subpoena. (See Pls.' Letter Mot. at 2).

In the context of a party's attempt to redact irrelevant information from relevant

7

documents, one court astutely observed:

> Redaction is an inappropriate tool for excluding alleged irrelevant information from documents that are otherwise responsive to a discovery request. It is a rare document that contains only relevant information. And irrelevant information within a document that contains relevant information may be highly useful to providing context for the relevant information. Fed. R. Civ. P. 34 concerns the discovery of "documents"; it does not concern the discovery of individual pictures, graphics, paragraphs, sentences, or words within those documents. Thus, courts view "documents" as relevant or irrelevant; courts do not, as a matter of practice, weigh the relevance of particular pictures, graphics, paragraphs, sentences, or words, except to the extent that if one part of a document is relevant then the entire document is relevant for the purposes of Fed. R. Civ. P. 34. This is the only interpretation of Fed. R. Civ. P. 34 that yields "just, speedy, and inexpensive determination[s] of every action and proceeding." Fed. R. Civ. P. 1.

Bartholomew v. Avalon Capital Grp., Inc., 278 F.R.D. 441, 451–52 (D. Minn. 2011). While that observation arose in the context of documents, the principle it expresses is a useful tool in the similar context of production of tangible items that is now before the Court. The premises the defendant seeks to inspect and the storage units thereon are relevant. Plaintiffs concede that at least some of the boxes within the storage units may be relevant. Absent the existence of a privilege, or severe prejudice that could not be ameliorated by an appropriate protective order, the plaintiffs may not prevent inspection of boxes contained at the relevant premises on the basis of their unilateral determination of irrelevance.

As reflected in the Court's previous minute entries over the course of the past six months, the information the defendant seeks to discover by issuing a subpoena directed to Christie's remains highly relevant. Neither time nor change of plaintiffs' counsel alters that conclusion. Plaintiffs' motion to quash or for protective order is therefore denied. Specifically, to the extent the plaintiffs' letter motion seeks leave for plaintiffs to screen or to allow inspection of only

8

certain boxes at the storage units, their motion is denied. Should a specific dispute arise during the course of the inspection, the parties shall call the Court immediately to resolve any such dispute.

C.    **Preservation Order**

The defendant has raised significant concerns regarding the possibility that evidence has been or will be spoliated. (See, e.g., Def.'s Letter at 2-3). In light of those concerns, and having considered both that defendant will suffer irreparable harm if evidence is lost and that the burden on plaintiffs and Christie's will be minimal, the Court has determined that it is appropriate to enter a preservation order. See In re Complaint of Specialist LLC, No. 16 CV 5010, 2016 WL 6884919, at *3 (S.D.N.Y. Nov. 22, 2016) (quoting Treppel v. Biovail Corp., 233 F.R.D. 363, 370 (S.D.N.Y. 2006)).

The Court therefore Orders that plaintiffs, Robert Toussie and Laura Toussie, as well as their agents, employees, or any other person acting on their behalf, are enjoined from removing any boxes or property from the storage units located at Christie's Fine Art Storage Services, 100 Imlay Street, Brooklyn, NY 11231 absent permission from this Court. This prohibition shall remain in place until the earlier of November 6, 2017 or the inspection of the premises by the defendant.

CONCLUSION

For the reasons set forth above, the Court denies plaintiffs' motion to quash the subpoena or for a protective order regarding defendant Allstate's subpoena to permit the inspection of premises and objects thereon directed to Christie's Fine Art Storage Services. To comply with the Court's previous minute entry and to ensure that discovery proceeds expeditiously, Allstate is directed to submit its subpoena directed to Christie's for the Court to "so order," and which Allstate must serve in place of its earlier subpoena.

Plaintiffs, Robert Toussie and Laura Toussie, as well as their agents, employees, or any other person acting on their behalf, are enjoined from removing any boxes or property from the storage units rented located at Christie's Fine Art Storage Services, 100 Imlay Street, Brooklyn, NY 11231 absent permission from this Court. This prohibition shall remain in place until the earlier of November 6, 2017 or the inspection of the premises by the defendant.

The Clerk is directed to send copies of this Order to the parties either electronically through the Electronic Case Filing (ECF) system or by mail.

**SO ORDERED.**

Dated: Brooklyn, New York
October 20, 2017

/s/ Cheryl L. Pollak
Cheryl L. Pollak
United States Magistrate Judge
Eastern District of New York