UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X
ROBERT TOUSSIE and LAURA TOUSSIE,

                Plaintiffs,

        -against-

ALLSTATE INSURANCE COMPANY,

                Defendant.
--------------------------------------------------------X

**MEMORANDUM AND ORDER**
15 CV 5235 (ARR) (CLP)

**POLLAK**, United States Magistrate Judge:

       This action was commenced on September 10, 2015 by plaintiffs Robert and Laura

Toussie, alleging that defendant Allstate Insurance Company ("Allstate") had improperly

adjusted and mishandled plaintiffs' claims for property theft incurred in the days following

Hurricane Sandy (the "theft case"). A companion case brought by Mr. Toussie seeking coverage

for damage to his home under a flood insurance policy issued by Allstate is currently pending as

well. (See Toussie v. Allstate Ins. Co., No. 14 CV 2705 (E.D.N.Y.)). Currently before this

Court is plaintiffs' letter motion dated March 19, 2018, seeking to lift the preservation order

previously entered by the Court. (Pls.' 3/19/18 Letter, ECF No. 161).

       In addition to raising issues relating to the preservation order, the parties have also

submitted separate letter briefing relating to Allstate's motion, seeking an order: 1) deeming

plaintiffs to have admitted Allstate's Requests to Admit or ordering plaintiffs to respond;

2) compelling plaintiffs to produce certain documents; and 3) imposing sanctions under Rule 37

of the Federal Rules of Civil Procedure. (See generally Def.'s 5/4/18 Letter, ECF No. 182). In

response, the plaintiffs have opposed defendant's motion and cross-moved for production of the

notes taken by Allstate's counsel and their paralegals during the course of the inspection of the

Toussies' storage unit at Christie's Fine Art Storage Services ("CFASS"). (Pls.' 5/9/18 Letter at

3, ECF No. 187).

Each of these issues is addressed below.

BACKGROUND

In the theft case, plaintiffs allege that numerous items of personal property covered by the Allstate theft policy were stolen by thieves who entered the Toussie home after it was seriously damaged by the Hurricane. During the course of discovery, Allstate claims to have found evidence that a number of boxes of items were moved from the Toussie home after the Hurricane and eventually stored at Christie's Fine Art Storage Services ("CFASS"), contrary to the Toussies' repeated claim that "they lost everything" in Hurricane Sandy. Thus, since at least September 2016, Allstate has sought to inspect the boxes that were removed from the Toussie home after Hurricane Sandy. (See, e.g., Def.'s 9/30/2016 Letter. at 1, ECF No. 72; Def.'s 10/11/2016 Letter. at 1, ECF No. 80; Def.'s Mem. in Support of Mot. for Recons. at 1, 4-6, Apr. 7, 2017, ECF No. 87-1; Def.'s 6/13/2017 Letter at 2-3, ECF No. 94).

In a series of Orders issued by this Court beginning in early October 2017, the Court resolved numerous disputes between the parties relating to Allstate's request to inspect and photograph the items stored at CFASS. (See, e.g., Minute Order, Oct. 4, 2017, ECF No. 107). In denying plaintiffs' motion to quash the subpoena issued by Allstate and ordering the inspection to proceed, the Court found that the identity of the items stored in these boxes was "highly relevant" because "the issue of what property remains in plaintiffs' possession and what property was lost during Hurricane Sandy is central to this litigation." Toussie v. Allstate Ins. Co., No. 15 CV 5235, 2017 WL 4773374, at *3 (E.D.N.Y. Oct. 20, 2017), ECF No. 110. The Court also issued a preservation order at that time in light of significant concerns that evidence had been or would be spoliated. Id. at *4 (citing In re Complaint of Specialist LLC, No. 16 CV

2

5010, 2016 WL 6884919, at *3 (S.D.N.Y. Nov. 22, 2016); Treppel v. Biovail Corp., 233 F.R.D. 363, 370 (S.D.N.Y. 2006)). Such concerns arose in part from the "plaintiffs' evasive and inconsistent answers regarding (1) whether, when, and by whom items were boxed and moved from their home, and (2) the location of any such boxes during the course of this litigation." Id. at *2.

After four separate Orders directing that the inspection proceed, the parties finally began the inspection on October 30, 2017. See Toussie v. Allstate Ins. Co., No. 15 CV 5235, 2017 U.S. Dist. LEXIS 178571, at *2-5 (E.D.N.Y. Oct. 27, 2017) (recounting the procedural history in denying plaintiffs' frivolous request to limit the inspection, and noting that "[t]he Court is deeply troubled by the [plaintiffs'] pattern of seeking to thwart proper discovery requests and to delay this litigation"), ECF No. 117. Numerous disputes arose as to the procedures to be used in inspecting the boxes and the number of boxes to be inspected and photographed, which led to significant delay primarily attributable to plaintiffs and their previous counsel,[1] necessitating several extensions of the preservation order on November 6, 2017, January 12, 2017, and on February 20, 2018 to allow for the completion of the inspection of the items in the CFASS storage unit.[2] See Toussie v. Allstate Ins. Co., No. 15 CV 5235, 2018 WL 993626, at *1-4 (E.D.N.Y. Feb. 20, 2018), ECF No. 154; Toussie v. Allstate Ins. Co., No. 15 CV 5235, 2018

[1] In addition to delays occasioned by plaintiffs' attempts to revisit prior Orders of this Court, a significant delay occurred when plaintiffs' attorneys withdrew from further representation of the Toussies and asserted a retaining lien, necessitating a stay in the cases while plaintiffs attempted to obtain—yet again—new counsel and resolve the dispute over the retaining lien. See generally Toussie v. Allstate Ins. Co., No. 15 CV 5235, 2018 WL 993626 (E.D.N.Y. Feb. 20, 2018), ECF No. 154.

[2] According to plaintiffs' letter of March 19, 2018, the inspection was completed as of March 16, 2018. Following the completion of the inspection, the Court issued a further extension of the preservation order on May 2, 2018 to allow the parties time to brief the instant motion.

U.S. Dist. LEXIS 5979, at *1-3 (E.D.N.Y. Jan. 12, 2018), ECF No. 147; Toussie v. Allstate Ins. Co., No. 15 CV 5235, 2017 U.S. Dist. LEXIS 183603, at *1-7 (E.D.N.Y. Nov. 6, 2017), ECF No. 119. (See also Minute Entry, Nov. 9, 2017, ECF No. 120 (resolving by phone the parties' disputes that arose during the inspection at CFASS); 5/9/2017 Hr'g Tr., ECF No. 125)).

## DISCUSSION

### I. The Preservation Order

By letter dated March 19, 2018, plaintiffs seek an Order lifting the preservation order to allow plaintiffs "to remove – and dispose of – their property at CFASS." (Pls.' 3/19/18 Letter at 1). In response, Allstate has no objection to lifting the preservation order as to 202 boxes at CFASS, but contends that 58 of the boxes, which Allstate has identified in Exhibit A to its letter of March 26, 2018, should be maintained and preserved as evidence for trial. (Def.'s 3/26/18 Letter at 1).

Having reviewed the parties' submissions, the Court grants plaintiffs' motion insofar as they seek to lift the preservation order as to the 202 boxes at CFASS that Allstate agrees need not be subject to a continuing preservation order.[3] However, for the reasons set forth below, the Court denies the remainder of the motion without prejudice, and orders that the remaining 58 boxes identified by Allstate continue to be preserved until such time as the parties have completed the procedures set forth below, after which plaintiffs may make a renewed motion to vacate the preservation order.

---

[3] That the Court is lifting the Order with respect to these boxes does not, however, relieve plaintiffs from their independent obligation to preserve any potentially relevant evidence the boxes may contain. If plaintiffs destroy or otherwise rid themselves of the boxes and the items they contain, and it later turns out that there was potentially relevant evidence contained in these boxes, plaintiffs remain subject to sanctions for spoliation.

A. <u>Applicable Legal Standards</u>

    1.  <u>Duty to Preserve Potentially Relevant Evidence</u>

Federal and state common law, as well as various procedural rules governing litigation, impose upon litigants the duty "to preserve documents and property that could potentially serve as evidence in a lawsuit." <u>R.F.M.A.S., Inc. v. So</u>, 271 F.R.D. 13, 21 (S.D.N.Y. 2010). The Federal Rules of Civil Procedure provide the protocols for complying with the duty to preserve evidence and the timing of discovery requests and responses. <u>Id.</u>; <u>see also</u> <u>Maracich v. Spears</u>, 570 U.S. 48, 90 (2013) (recognizing the connection between Rule 26 and a party's "duty to preserve material evidence"). The obligation to preserve evidence arises when the party "has notice that the evidence is relevant to litigation – most commonly when suit has already been filed, providing the party with express notice, but also on occasion in other circumstances, as for example when a party should have known that the evidence may be relevant to future litigation." <u>Kronisch v. United States</u>, 150 F.3d 112, 126 (2d Cir. 1998); <u>see also</u> <u>Fujitsu Ltd. v. Federal Exp. Corp.</u>, 247 F.3d 423, 436 (2d Cir. 2001). "[A]nyone who anticipates being a party or is a party to a lawsuit must not destroy unique, relevant evidence that *might* be useful to an adversary." <u>In re Complaint of Specialist LLC</u>, No. 16 CV 5010, 2016 WL 6884919, at *2 (S.D.N.Y. Nov. 22, 2016) (emphasis added) (quoting <u>Zubulake v. UBS Warburg LLC</u>, 220 F.R.D. 212, 217 (S.D.N.Y. 2003)).

There is no question that a party's duty to preserve relevant evidence extends not only to documents but also to "other tangible evidence." <u>R.F.M.A.S., Inc. v. So</u>, 271 F.R.D. at 32. "Evidence that must be preserved includes documents, electronically stored information, and physical evidence that the party knows or reasonably should know is relevant to claims or defenses in the action, is reasonably calculated to lead to the discovery of admissible evidence, or is reasonably likely to be requested during discovery." <u>Id.</u> at 23-24 (discussing the duty to

preserve pieces of "quite valuable" jewelry as evidence in the context of a motion for spoliation sanctions); see also In re Complaint of Specialist LLC, 2016 WL 6884919, at *4 (holding that a tug boat which cost $19,500 per month to store had to be preserved as evidence). Moreover, while the destruction of a piece of evidence clearly constitutes spoliation, see R.F.M.A.S., Inc. v. Mimi So, 271 F.R.D. at 32, the Second Circuit has held that even the normal sale of an item of evidence can constitute spoliation, see West v. Goodyear Tire & Rubber Co., 167 F.3d 776, 778-79 (2d Cir. 1999), as can the act of returning relevant evidence to the store, see, Peyser v. Searle Blatt & Co., Ltd., No. 99 CV 10785, 2000 WL 1071804, at *8 (S.D.N.Y. Aug. 2, 2000), or gifting it to another. See, e.g., Arista Records, LLC v. Usenet.com, Inc., 633 F. Supp. 2d 124, 136, 139-40 (S.D.N.Y. 2009).

    2.  <u>Enforcing the Duty to Preserve</u>

    (i)  <u>Authority to Issue Preservation Order</u>

Not only does a party have a duty to preserve potentially relevant evidence, courts are empowered to issue orders enforcing a party's preservation obligations, especially where the failure to preserve poses an unacceptable risk of undermining the integrity of the judicial process or preventing an adjudication on the merits altogether. Although orders requiring the preservation of relevant evidence issue with some regularity, courts have identified and rely on several different overlapping sources of authority that empower them to issue such preservation orders.

    (a)  <u>Inherent Authority</u>

More than in any earlier era, discovery is essential to our system of civil justice. The Federal Rules cannot achieve their objective "to secure the just, speedy, and inexpensive determination" of each case without proper discovery. Fed. R. Civ. P. 1. More importantly,

however, federal courts will be effectively prevented from exercising the judicial power over civil cases in a just manner if parties engage in conduct that prevents proper discovery. Thus, when a party attempts to deprive not only the opposing party, but also the court, of the evidence necessary for a fair adjudication on the merits, the judicial process is threatened and society's confidence in that process is undermined. Just as the scope and importance of discovery have increased tremendously over the past fifty years, so too must a court's ability to ensure the integrity of that process by exercising its inherent powers in appropriate circumstances to preserve evidence necessary to the process of adjudication.

"It has long been understood that '[c]ertain implied powers must necessarily result to our Courts of justice from the nature of their institution,' powers 'which cannot be dispensed with in a Court because they necessary to the exercise of all others.'" Chambers v. NASCO, Inc., 501 U.S. 32, 43 (1991) (quoting United States v. Hudson, 11 U.S. (7 Cranch) 32, 34 (1812)). The exercise of such inherent power is "governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." Link v. Wabash R. Co., 370 U.S. 626, 630-31 (1962). A court's inherent powers are at their height when their exercise is necessary to preserve the integrity of the tribunal and the adjudicative process, and may be used retroactively to remediate harm or prospectively to prevent it. See Pueblo of Laguna v. United States, 60 Fed. Cl. 133, 137 (2004) (concluding that exercise of the power to adjudicate requires a court "to be empower to prevent abuses of its process" and to have "the ability to preserve relevant evidence—a power 'necessary to the exercise of all others'") (quoting United States v. Hudson, 11 U.S. (7 Cranch) at 34); see also Universal Oil Prods. Co. v. Root Refining Co., 328 U.S. 575, 580 (1946) (explaining that a federal court has all powers necessary to unearth fraud effectively and to prevent "the very temple of justice [from being] defiled").

In light of the paramount importance of preserving the soundness of the process of adjudication, courts entering preservation orders have universally invoked their inherent power, even when relying on another source of authority.  See, e.g., American Legalnet, Inc. v. Davis, 673 F. Supp. 2d 1063, 1071 (C.D. Cal. 2009).

(b) Federal Rules of Civil Procedure

Courts have also found authority to enter preservation orders under various provisions of the Federal Rules of Civil Procedure, even though no rule explicitly empowers a court to enter an order to preserve relevant physical evidence.  As the drafters of the Federal Rules have observed, "[t]he duty to preserve may in some instances be triggered or clarified by a court order in the case.  Preservation orders may become more common, in part because Rules 16(b)(3)(B)(iii) and 26(f)(3)(C) are amended to encourage discovery plans and orders that address preservation."  Committee Note to 2015 Amendment to Fed. R. Civ. P. 37(e); see also 8 Charles A. Wright et al., Federal Practice and Procedure § 2012 (3d. ed., Apr. 2018 Update) (explaining that "even before discovery has begun a court may enter an order directing that such materials [documents or things subject to inspection under Rule 34] be preserved for possible future use in discovery"); Manual for Complex Litigation § 11.442 (4th ed. 2004) (directing courts to consider entering preservation orders before the initial conference and the start of discovery).

Rule 26 provides that a court "may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense," and sets forth a non-exclusive list of potential actions a court may require as part of a protective order.  Fed. R. Civ. P. 26(c)(1).  Orders to preserve relevant evidence do "not fit squarely within the language of the rule," but nonetheless "district courts have entered protective orders in order to preserve

physical evidence that might be needed for trial." Adams v. Thyssenkrupp Safway, Inc., No. 09

CV 1342, 2010 WL 2850769, at *3 (C.D. Cal. July 20, 2010); see id. (collecting cases).

Relatedly, Rule 16 allows courts to enter orders governing the pretrial course of the

action, including: "preservation of electronically store information," Fed. R. Civ. P.

16(b)(3)(B)(iii); "other appropriate matters," Fed. R. Civ. P. 16(b)(3)(B)(vii); "controlling . . .

discovery, including orders affecting disclosures and discovery under Rules 26 and Rules 29

through 37," Fed. R. Civ. P. 16(c)(2)(F); and "adopting special procedures for . . . protracted

actions," Fed. R. Civ. P. 16(c)(2)(L). Several courts have thus relied on Rule 16 to issue

preservation orders. See Pueblo of Laguna v. United States, 60 Fed. Cl. at 137 (collecting cases).

Although Rule 37 deals with discovery sanctions, it demonstrates a court's authority to

enter a preservation order in several ways. Most notably, the rule empowers courts to enter

orders compelling a party to permit inspection under Rule 34, which necessarily implies the

power to order the subject of the inspection preserved until the inspection ordered by the court

proceeds. See Fed. R. Civ. P. 37(a)(3)(B)(iv). The rule also establishes limits on a court's

ability to sanction a party for its failure to preserve electronically stored information. See Fed.

R. Civ. P. 37(e). Finally, the commentary to the rule explicitly contemplates that "a preservation

obligation may arise from . . . a court order in the case." Committee Note to 2006 Amendment

to Fed. R. Civ. P. 37(f).

(ii) Standard for Preservation Orders

In the instant case, the parties dispute the proper standard by which the Court should

determine if a preservation order should issue.

Plaintiffs contend that the relief sought by Allstate is in essence an injunction restraining

plaintiffs from selling their property and that defendant must demonstrate the elements necessary

to support a preliminary injunction: 1) "'irreparable harm'" and 2) the "'likelihood of success on

the merits or . . . sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward [the defendant].'" (Pls.' 3/19/18 Letter at 2 (quoting Christian Louboutin S.A. v. Yves Saint Laurent Am. Holdings, Inc., 696 F.3d 206, 215 (2d Cir. 2012)). Thus, plaintiffs contend that defendant should be required to make a formal preliminary injunction motion, "supported by affidavits from persons with knowledge showing Allstate's likelihood of success on its claims," and post a bond to "'cover any damages that may result if it were later determined that [Allstate] was not entitled to an injunction.'" (Id. (quoting Shamrock Power Sales, LLC v. Scherer, No. 12 CV 8959, 2016 WL 6102370, at *10 (S.D.N.Y. Oct. 18, 2016)).

Allstate contends that a preservation order is not the same thing as an injunction and that the standards governing a preliminary injunction do not apply in this case. (Def.'s 3/26/18 Letter at 2). Indeed, as Allstate points out, plaintiffs have a duty to preserve this evidence even in the absence of a preservation order. (Id.)

(a) Prevailing Standards for Orders Preserving Relevant Evidence

The prevailing standards by which courts determine whether to issue a preservation order are the same, regardless of the source of authority for the order. Although some courts outside of the Second Circuit have taken the position that a party seeking a preservation order must meet the requirements for a preliminary injunction, courts in this Circuit have generally rejected that position, which would require a party to show irreparable injury and "either (a) likelihood of success on the merits, or (b) sufficiently serious questions going to the merits and a balance of the hardships tipping decidedly in the movant's favor." Treppel v. Biovail Corp., 233 F.R.D. 363, 370 (S.D.N.Y. 2006) (quoting Green Party of New York v. New York State Bd. of Elections, 389 F.3d 411, 418 (2d Cir. 2004)).

In Treppel v. Biovail Corp., the court observed that to apply preliminary injunction standards to a preservation order request "creates anomalies," requiring the court to "evaluate the merits of the litigation even before evidence has been gathered, let alone produced to the opposing party or submitted to the court." 233 F.R.D. at 370. Similarly, the court in Capricorn Power Co. v. Siemens Westinghouse Power Corp. concluded that the test "typically applied to matters concerning injunctive relief is not a completely appropriate test to utilize when examining the need for a preservation order, particularly since proof of a probability of success in the litigation is not an appropriate consideration in the determination whether to order preservation of documents." 220 F.R.D. 429, 433 (W.D. Pa. 2004). "[A]n order of preservation concerns matters within the scope of the rules of discovery," and does not reach the substantive merits of any party's claim or defense. Id. There is "no reason 'to consider whether [a party] is likely to be successful on the merits of its case in deciding whether to protect [evidence] from destruction. . . . [S]uch an approach would be decidedly to put the cart before the horse.'" Treppel v. Biovail Corp., 233 F.R.D. at 370 (quoting Pueblo of Laguna v. United States, 60 Fed. Cl. at 138 n.8). As the court in Pueblo of Laguna v. United States aptly observed, courts that have adopted the test for injunctive relief have "ignore[d] significant changes made to the Federal Rule of Civil Procedure since the 1960's. . . . In the court's view, a document preservation order is no more an injunction than an order requiring a party to produce documents in discovery." 60 Fed. Cl. at 144 n.8.

Rather than the imposing the requirements for a preliminary injunction, most courts generally have applied one of two alternative tests for determining whether to issue a preservation order. Some courts have adopted a two-prong test that requires the party seeking a preservation order to "demonstrate that it is necessary and not unduly burdensome." Pueblo of Laguna v. United States, 60 Fed. Cl. at 138. Other courts adhere to a three-factor test such as

that applied in <u>Capricorn Power</u>, which requires courts to balance considerations of:

> 1) the level of concern the court has for the continuing existence and maintenance of the integrity of the evidence in question in the absence of an order directing preservation of the evidence; 2) any irreparable harm likely to result to the party seeking the preservation of evidence absent an order directing preservation; and 3) the capability of an individual, entity, or party to maintain the evidence sought to be preserved, not only as to the evidence's original form, condition or contents, but also the physical, spatial and financial burdens created by ordering evidence preservation.

22 F.R.D. at 433; <u>see also</u> <u>Treppel v. Biovail Corp.</u>, 233 F.R.D. at 370 (describing the three-factor balancing test). Under both tests, the party seeking a preservation order must make the key showing that there is a significant risk that relevant evidence will be lost or destroyed in the absence of a court order. <u>See</u> <u>id.</u> at 370-71 (comparing the tests); <u>Pueblo of Laguna v. United States</u>, 60 Fed. Cl. at 138. While a demonstration that the evidence is "one of a kind" certainly strengthens an application, "neither this nor any other single factor is determinative." <u>Treppel v. Biovail Corp.</u>, 233 F.R.D. at 370; <u>see also</u> <u>Capricorn Power Co. v. Siemens Westinghouse Power Corp.</u>, 220 F.R.D. at 435 (observing that both "one-of-a-kind" evidence, as well as evidence that is "integral and essential to a party's case," may require a preservation order even in the absence of significant concern of loss or destruction).

(b) <u>Showing Required for Preliminary Injunction</u>

Despite clear precedent in this Circuit applying one of the two aforementioned tests to orders seeking preservation of evidence for use in discovery and at trial, plaintiffs contend that a different standard should apply. Plaintiffs argue that what Allstate is seeking is an order preventing plaintiffs from disposing of their valuable personal property, and they contend that "[n]either a preservation order nor an injunction may be used to restrain a party's property to

satisfy a potential judgment."[4] (Pls.' 3/29/18 Letter at 3). Plaintiffs cite several cases in support of their request to apply injunctive standards to the current request for a preservation order, but each is distinguishable.

In Weitzman v. Stein—the only case from this Circuit cited by plaintiffs—the "preservation order" issued by the district court prevented a non-party from transferring, disposing of, or using certain corporate and personal assets—essentially U.S. currency—that were the subject of a fraudulent conveyance claim. See 897 F.2d 653, 655-57 (2d Cir. 1990). The Court of Appeals reversed the "freeze order," finding the district court lacked jurisdiction over the non-party, failed to make a finding of irreparable injury, and a failed to enunciate the standard it applied to issue the order. Id. at 657-59. Unlike the instant case, where defendant contends that the actual items are relevant evidence that may be necessary to show to an expert or to the trier of fact, there was nothing in Weitzman to suggest that there was anything unique about the subject assets that would make them evidence in the case. To the contrary, the order in Weitzman was issued in connection with post-judgment enforcement proceedings under CPLR § 5225(b). Id. at 654. Thus, the injunction standard was appropriate in those circumstances because the order at issue sought to preserve fungible assets to satisfy a judgment, not because of any evidentiary value the particular assets might have had in connection with the court's adjudication of the merits of the parties' substantive claims.

The other two cases cited by plaintiffs are also very different from the case at hand. In Adler v. Bates Airstream RV, the court temporarily restrained the sale of a vehicle until an expert could evaluate the vehicle, finding that under the circumstances, there was no irreparable harm. No. 07 CV 2821, 2007 WL 2080005, at *1 (D.N.J. July 17, 2007) (unpublished letter order).

---

[4] See discussion infra at 14.

Although the court in Adler applied the standards of a preliminary injunction, the analysis was limited to irreparable harm and there was no discussion of the other prong of the test—the likelihood of success on the merits—because the defendant agreed to maintain the vehicle.  Id.

Similarly, in J&S Development Corp. v. Montrose Global Assets, Inc., the court explained that the preservation order at issue appeared to be a preliminary injunction because it was enforceable by contempt, and designed to accord some or all of the substantive relief sought by the complaint in more than a temporary fashion.  279 F. App'x 131, 133 (3d Cir. 2008). However, since the property was only restrained long enough to take an inventory, the order expired on its own terms and there was no need to enforce sanctions.  Id.

To the extent that plaintiffs rely on cases in which an order has issued to prevent the loss of property that may be used to satisfy a judgment, plaintiffs misconstrue the Court's purpose in initially imposing the preservation order and the rationale advanced by Allstate for the continued need to preserve the items in the CFASS unit.  Neither the Court nor Allstate has ever suggested that the purpose of the preservation order was to restrain plaintiffs' assets to satisfy a judgment. Indeed, the Court issued the initial preservation order on October 20, 2017 because of concerns that plaintiffs' repeated delays and attempts to obstruct the Ordered inspection might relate to attempts to avoid inspection of property or to spoliate evidence.  The preservation order was continued in light of even further delays occasioned by the plaintiffs and their various counsel. Allstate did not even seek leave to file counterclaims until February 7, 2018, long after the preservation order had been in effect, and that motion remains pending as of the date of this Order.  (See Def.'s 2/7/2018 Letter, ECF No. 152).  Thus, plaintiffs' contention that the preservation order is actually calculated to restrain their assets to satisfy a judgment on defendant's proposed counterclaims is simply nonsensical.

In essence, Allstate contends that the items in the boxes are critical evidence essential to

the parties and the trier of fact in evaluating whether plaintiffs have indeed demonstrated that the items they claim were stolen from their home were in fact taken or, as Allstate contends in its defenses and proposed counterclaims, are actually sitting in the warehouse, removed there after the storm by Mrs. Toussie and others.

(c) The Proper Standard

The Court has carefully considered the cases cited by the parties and agrees with other courts that have rejected the preliminary injunction standard in the context of orders to preserve relevant evidence for use in discovery and at trial. Unlike a preliminary injunction, a preservation order has little to do with the substantive merits of any claim or defense; instead, such an order enforces the parties' pre-existing, independent obligations to preserve relevant evidence for use in discovery and at trial, thereby ensuring the integrity and fairness of the adjudicative process.

Consistent with that purpose, the Court agrees that a version of the balancing test is the appropriate standard by which to determine whether to continue the preservation order. Thus, the Court will consider: 1) the danger of destruction absent a court order, 2) whether any irreparable harm is likely to result to the party seeking preservation in the absence of an order, and 3) the burden of preserving the evidence.

B. Analysis

In this case, the Toussies assert that thieves stole almost $4 million of designer leather bags, belts, shoes, designer gowns, sunglasses, jackets, crystal, glassware, vases, and expensive china, including a complete dinner service of Flora Danica china, valued at over $1.5 million. Defendant asserts that it learned during discovery that approximately 190 boxes containing personal property were removed from the Toussies' home after the Hurricane and stored in the

CFASS unit.  (Def.'s 5/4/18 Letter at 1, ECF No. 182; id. Ex. D, ECF No. 182-4).  The Court, as noted, directed the parties to examine the boxes in the CFASS unit, and take photographs of what was in the boxes.  Based on that examination and inspection, defendant asserts that some of the boxes contain property that match the description of the items now being claimed as stolen.  (Id. at 2).  Specifically, defendant claims that 44 of the 58 boxes in dispute contain Flora Danica china, and two boxes contain crystal, all of which match the property listed by the Toussies as lost or stolen, or for which Allstate has already made payment.  (Def.'s 3/26/18 Letter at 1, ECF No. 165).  Other boxes and property bear markings showing that they were removed from the Toussies' home after the Hurricane.  (Id.)

Defendant also contends that the contents of these boxes contradict "sworn statements that the Toussies 'lost everything,'" and cast doubt on the claim that the looters took "sunglasses and perfume," while leaving behind millions of dollars of valuable items.  (Id.)  The key question in the coverage dispute is whether Allstate has failed to honor its policy and reimburse the Toussies for covered property that was stolen after the Hurricane.  As this Court has previously opined, a critical issue is "what property remains in the plaintiffs' possession and what property was lost during Hurricane Sandy."  (Id. (quoting Toussie v. Allstate Ins. Co., 2017 WL 4773374, at *3. ECF No. 110)).  Thus, there is no question that the items in the boxes are relevant as evidence and plaintiffs have a duty to preserve them.

The Court has grave concerns that in the absence of a preservation order, the items at issue will be sold or transferred and thus unavailable as evidence at trial.  Indeed, plaintiffs' entire opposition to the continued preservation order is their stated desire to sell the items currently in the CFASS unit as soon as possible.  (Pls.' 3/29/18 Letter at 1-2) (requesting that the preservation order be lifted and plaintiffs be allowed "to remove and dispose of – their property at CFASS" and alleging that they are relying on income from the sale of these items).  Thus,

regardless of whether the Court relies on the two-part balancing test or the three prong test, it is clear that in the absence of an order, plaintiffs intend to dispose of the boxes.

As for the showing of irreparable harm, plaintiffs contend that defendant has extensively photographed and inspected each of the boxes in the unit and there is no further need for the items in the boxes. (Pls.' 3/29/18 Letter at 4). However, defendant notes that plaintiffs have disputed defendant's claim that these items are the same as those listed on the theft list and were never actually lost or stolen but have remained in plaintiffs' possession to date. (Def.'s 3/26/18 Letter at 2-3). Indeed, in their March 29, 2018 letter, plaintiffs flatly deny that any of the items in the boxes photographed by Allstate "were insured under the policy in this case, or under any other policy under which Allstate has already paid Plaintiffs, but instead were among many duplicates for which no insurance claim was ever made." (Pls.' 3/29/18 Letter at 4). Plaintiffs argue that the items that are part of plaintiffs' claim "are all items – many of which are dishes – that Plaintiffs clearly identified in his [sic] claims as being bought over 30 years ago. An example are dishes that Plaintiffs' housekeeper testified at her deposition were routinely used for years. Thus these items on the claims were certainly not new. . . . But the packaging and labeling on the duplicate items at CFASS . . . establish beyond cavil that these items were bought much more recently . . . and are new, unused, and pristine." (Id.)

While defendant concedes that it has taken photographs of the items, it emphasizes that photographs may be insufficient at trial, and has expressed concerns that plaintiffs will contest whether a photograph accurately depicts a particular item or will argue that Allstate has altered a photo or connected the hallmark on the bottom of an item to the incorrect item. (Id. at 3). Defendant contends that the only way to resolve such disputes is to have the actual items available. (Id.)

In addition, both parties may need experts to examine particular items to resolve such

disputes, and the trier of fact may need to examine some of the items to determine if in fact, as plaintiffs claim, the items in the boxes are "pristine" and "unused" and therefore not the items listed on the claim form. (Id.) See R.F.M.A.S., Inc. v. So, 271 F.R.D. at 49 (observing that "a person who had examined the physical samples . . . would be better equipped to observe any similarities or differences . . . than one who only examined photographs, even if they were high-quality photographs"); id. at 50 (recognizing "that an actual examination of the [physical evidence] would have provided a stronger foundation for these experts' opinions" and that "[p]hotographs are a poor substitute for the actual [evidence,]" in part because certain qualities, such as weight, cannot be photographed). Moreover, given that both parties are in the process of briefing motions to amend their respective pleadings, it is difficult at this time to anticipate what other issues are now going to be raised and whether photographs would be sufficient.

Considering the position taken by plaintiffs in their letter briefing and cognizant of the fact that plaintiffs have continued throughout the litigation to refuse to stipulate to virtually anything, it is highly unlikely that ordering the parties to meet and confer on a stipulation that would eliminate the concerns raised by defendant would be productive. Thus, the Court finds that there will be irreparable harm to defendant if plaintiffs are allowed to dispose of the property and yet come forward at trial to argue about the sufficiency or insufficiency of photographs of the items.

As for the third prong of the test set forth in Capricorn—namely, the ability of and financial hardship to the party if required to maintain the property—Allstate argues that the cost of storing the items in the boxes at issue is only $495 a month according to the invoices the Toussies have produced in discovery. (Def.'s 3/26/18 Letter at 3). However, the Court recognizes that plaintiffs are hoping to sell the items in the boxes to supplement their income and may suffer some financial hardship if forced to wait. (See Pls.' 3/29/18 Letter at 5). Indeed,

plaintiffs claim that if they are restrained from selling this property, it will "cost[] Plaintiffs' [sic] millions of dollars in lost sales." (Id.) Although Allstate argues that plaintiffs have not sought to sell these items since 2012 and question whether the motive behind plaintiffs' sudden desire to sell the items is based upon a concern that the items will be used as evidence (see Def.'s 3/26/18 Letter at 1 n.1), the Court finds that the financial burden to plaintiffs here is moderate in light of the plaintiffs' oft-professed wealth[5] and the amount in controversy, but nonetheless must be balanced against the significant and irreparable harm that defendant will face if the items are disposed of before trial. See, e.g., R.F.M.A.S., Inc. v. So, 271 F.R.D. at 33 (explaining that "[i]t cannot be the case that a party may freely dispose of evidence otherwise subject to a duty of preservation simply because it is expensive. Such a rule would undoubtedly be unworkable and is, at any rate, not supported by any legal authority").

In an effort to balance the competing interests at stake here, the Court has considered the fact that plaintiffs adamantly dispute Allstate's claim that the items in these boxes are the items for which plaintiffs now seek reimbursement. In addition, the Court has also considered plaintiffs' contention that the photographs will be sufficient at trial and therefore there is no need to impose further financial burden on plaintiffs by restraining the sale of these items.[6] On the other hand, Allstate has raised valid concerns that these items have unique evidentiary value that will be lost if not preserved for trial, and rightly emphasizes that plaintiffs and their prior attorneys have been unwilling to enter into stipulations on any issue in this litigation. Plaintiffs

---

[5] See, e.g., 8/23/2017 Tr. 9:23-11:21 (plaintiff Robert Toussie explaining his wealth to the Court by declaring that he has spent over $300,000 on clothing, recently obtained a $7 million judgment in his favor, and has paid over $100 million in legal fees during his lifetime).

[6] Plaintiffs contend that Allstate has acted in bad faith in handling plaintiffs' Fine Arts claim and now is attempting to use the preservation order to "bully Plaintiffs into dropping their claims by exploiting the financial pressure that the continued restraint over Plaintiffs' property has caused them." (Pls.' 3/29/18 Letter at 4).

suggest that there is nothing that would prevent Allstate from moving for spoliation sanctions in the event that plaintiffs dispose of relevant evidence. (Pls.' 3/29/18 Letter at 5, ECF No. 168). While that is true, it does not follow that the Court must permit them to do so and instead rely on collateral litigation regarding spoliation to ensure the integrity of the litigation. Indeed, short of an order of preclusion or an adverse inference should plaintiffs attempt to argue that an item in one of the boxes was not the same item claimed as stolen, standard sanctions are likely insufficient. Of greater concern is the fact that the parties are in the process of amending their pleadings; until those pleadings are filed and the parties respond, it is impossible to determine whether there are additional reasons to order the continued preservation of this critical evidence.

Accordingly, the Court grants in part Allstate's request to continue the preservation order as to the 58 identified boxes until the Court has received further information regarding the adequacy of photographs at trial. The parties shall submit expert reports regarding the sufficiency of photographs of the items in the boxes for use at trial within thirty (30) days. If an additional brief inspection by the experts is desirable, the parties should arrange such an inspection with each other. Such further inspection is to last no more than one (1) day, except on agreement of the parties.[7] In addition to the information requested by the Court, the parties' experts should use this as an opportunity to examine the items in the boxes for purposes of expert testimony at trial, at least to the extent such an examination is possible under these circumstances.

The parties are further Ordered to confer and, if possible, stipulate to exhibits to be used

---

[7] The Court notes that plaintiffs have, in the past, deliberately obstructed and delayed the inspection of the boxes by defendant, necessitating numerous conferences and orders from this Court. Any such effort now to delay or prevent the expert, should defendant choose to have one, will result in sanctions and an order preserving all 58 boxes for trial.

at trial, so that there is no dispute later as to whether the photograph of an item corresponds to the photograph of the item's number on the back and the box in which the item was found. Failure to so agree will convince the Court that preservation of all of the items through trial is required.

During this time, the parties shall proceed to brief their motions to amend their pleadings.[8] Defendant is to provide a letter to the Court supplementing any arguments in support of preservation based upon the new allegations in plaintiffs' amended pleadings. Plaintiffs shall respond within five days of receiving that letter.

The parties are further directed to confer on whether there is a way to preserve a sample of the items in the boxes for use at trial. The Court finds it difficult to believe that defendant would seek to have the trier of fact examine all 58 boxes containing multiple items.

If the parties are unable to agree to the protocols set forth herein and the items are spoliated, severe sanctions will issue.[9]

---

[8] The Court ordered plaintiffs to file their proposed motion to amend the Complaint by May 10, 2018. (See Endorsed Order at 1, Apr. 12, 2018, ECF No. 172). Plaintiffs ignored that deadline. Instead, two weeks after the deadline passed, plaintiffs filed a letter baselessly accusing Allstate of misconduct and expressing that "Plaintiffs intend to file their motion for leave to amend their complaint when their investigation is complete . . . . [and] reserve the right to submit supplemental briefing on Allstate's motion[.]" (Pls.' 5/24/18 Letter at 2, ECF No. 191). Although concerned that plaintiffs ignored a deadline set by the Court and may have filed their May 24, 2018 letter solely as an excuse to get more time, at a hearing on June 1, 2018, the Court allowed plaintiffs one week from the date of this Order to file their motion for leave to amend the complaint. (See 5/31/2018 Tr. 13:1-3, 19:6-11, ECF No. 197).

[9] The Court reiterates that regardless of whether the preservation order has been lifted with respect to a particular item has no bearing on the parties' independent preservation obligations. Thus, even if photographs are deemed sufficient and the preservation order is lifted, the sale of the items at CFASS may nonetheless violate plaintiffs' preservation obligations and could result in sanctions, such as an instruction informing the jury that plaintiffs sold the items before trial.

## II. Other Discovery Disputes

### A. Requests to Admit

Allstate seeks an Order from this Court deeming admitted Allstate's Requests to Admit, which were served on plaintiffs' former counsel on November 30, 2017. (Def.'s 5/4/18 Letter at 1). The Requests to Admit seek an admission from plaintiffs that the boxes inspected at the CFASS unit were property that was removed from the Toussies' home after the Hurricane. (Id. at 3). The First Request states: "Admit that after October 29, 2012, Lockson Inc. ("Lockson") removed 26 cartons of Flora Danica porcelain from 290 Exeter Street in cartons numbered from D1 to D26." (Id., Ex. B). Instead of directly responding, plaintiffs objected to the request as "not relevant . . . harassing and disproportionate to the needs of the case." (Id.) Request No. 3 similarly seeks an admission that "the 47 boxes listed on Exhibit A [to the Requests for Admission] contained property removed from 290 Exeter Street after October 29, 2012." (Id.) Again, plaintiffs objected on relevance grounds and claimed the request was "harassing and disproportionate to the needs of the case." (Id.) Plaintiffs raised the same objection to every single one of the first 11 Requests to Admit, as well as Request No. 15, and as for the remainder, plaintiffs raised the same objections but added an assertion that each request was "improper under Fed. R. Civ. P. 36 because it calls for a legal conclusion to the extent it seeks admissions about 'authorized' additions or removals of property." (Id.)

Plaintiffs argue that the Requests seek admissions about irrelevant facts. (Pls.' 5/9/18 Letter at 2). The Court need not waste time addressing this issue because, as noted supra, the question of whether plaintiffs can demonstrate that they were not paid for items allegedly stolen from their home and defendant's assertion that the items at issue actually were removed from the home and stored with Christies is likely to be the paramount issue of fact in the case, apart from whether plaintiffs can even demonstrate ownership of the some of the items on their list.

Plaintiffs' objections to the Requests to Admit on these grounds are frivolous and utterly improper. Since plaintiffs have had more than enough time to respond to these requests in an appropriate manner and they have chosen instead to file frivolous objections, the Court deems Requests Nos. 1-11, and 15 admitted.

To the extent that plaintiffs have challenged the Requests to Admit that seek to determine if there was an "authorized addition or removal of property from any of the boxes" with certain designations, the Court agrees that the term "authorized" is unclear in the context of these requests and seems to call for a legal conclusion. (See Req. Nos. 12-14). Accordingly, the Court denies defendant's request to deem these Requests admitted.

B. Request for Production of Video

Allstate moves to compel production of the videos taken by the Toussies during the course of the inspections of the CFASS unit boxes. (Def.'s 5/4/18 Letter at 3). In response, the plaintiffs condition their production of the videos on production by defendant of the "photographs and notes that its counsel and paralegals took during the inspection." (Pls.' 5/9/18 Letter at 3). Plaintiffs contend that they went to great expense to video tape the inspection proceedings[10] and plaintiffs argue that by requiring Allstate to produce its photographs and notes, they are simply ensuring that "all parties are on equal footing concerning the information they have." (Id.)

Defendant has agreed to produce the photographs taken by counsel, but contends that the notes taken by counsel or at counsel's direction are work product and need not be produced. (Def.'s 5/4/18 Letter at 3). Defendant argues that the notes were prepared during litigation by or

_____

[10] The Court notes that it was plaintiffs' choice to videotape the proceedings. It was neither requested by defendant nor was it ordered by this Court. Thus, the expense is the plaintiffs' responsibility.

for a party or its representative, and thus clearly satisfy the definition of work product. (Id. at 3-4 (citing Magee v. Paul Revere Life Ins. Co., 172 F.R.D. 627, 639 (E.D.N.Y. 1997)). According to counsel, the notes reflect the mental impressions and personal observations of the attorney as he viewed the items in the boxes. (Id. at 4).

The Court finds that the attorney's notes reflecting observations and impressions of the items being reviewed are clearly work product and not subject to production absent a showing of "substantial need" for these notes. SEC v. NIR Group, LLC, 283 F.R.D. 127, 135 (E.D.N.Y. 2012). Here, the Toussies have failed to make the requisite "highly persuasive showing" of "substantial need" for these notes, arguing simply that the notes "reflect facts and details about the items in the room," and "enjoy no greater expectation of confidentiality than the video recordings." (Pls.' 5/9/18 Letter at 4). Moreover, plaintiffs contend that defendant has waived any right to claim work product because counsel "regularly spoke in the inspection room in front of Plaintiffs' counsel, CFASS staff and counsel and Plaintiffs' videographers about the content of these notes." (Id. at 3).

Defendant disputes that counsel waived the right to maintain the confidentiality of the notes, arguing that the "presence of the Toussies' counsel [while the notes were being taken] does not mean that Allstate had no expectation of confidentiality regarding its counsel's thought process regarding what to take note of – which of course has remained confidential." (Def.'s 5/10/18 Letter at 4). Indeed, despite plaintiffs' arguments as to waiver, nowhere do they even begin to suggest that defendant showed the contents of the notes to plaintiffs or to counsel for either plaintiffs or for CFASS. Contrary to plaintiffs' assertions, the Court finds no basis on which to conclude that a waiver of the work product privilege has occurred.

The Court also finds that even if plaintiffs' claims that the notes are all factual and do not

contain the attorney's impressions or thoughts were true,[11] plaintiffs have made absolutely no showing as to why the notes are necessary or why plaintiffs have no ability to obtain the equivalent information. The property was equally available to the Toussies and counsel for the Toussies, who were present at all times during the inspection and had equal opportunity to take notes or to weigh and photograph the items. (Id. at 4). Indeed, if the notes contain measurements of certain items or the recording of certain numbers found on the items as plaintiffs contend, that information and the ability to record the same information was equally available to plaintiffs who were present during the inspection. Moreover, although not raised by the parties, the Court observes that the boxes at CFASS are within the Toussies' possession, custody, or control, and thus, unlike Allstate, they have even greater access to the boxes and have a correspondingly diminished need for the notes of opposing counsel. Thus, plaintiffs have made no showing of need in this case.

To the extent that plaintiffs argue that the video taken by plaintiffs and the photographs taken by the defendant are equally discoverable, the Court agrees and ORDERS defendant to provide copies of the photographs taken during the inspection; plaintiffs are ORDERED to provide copies of the videos taken during the inspection.

C. Request for Sanctions

Defendant requests an opportunity to be heard in connection with its motion for sanctions and request for the Toussies to pay Allstate's attorneys' fees and costs in meeting and conferring and briefing the May 4, 2018 motion for production of the videotape and to have the Requests to

---

[11] The Court notes that the decision of the attorney as to what to write down, what measurements to record and possible observations or impressions about the condition of various items fall directly within the definition of work product and the Court finds no need, as plaintiffs have suggested, to slog through the attorneys' notes simply because plaintiffs believe that they may contain factual information.

Admit deemed admitted. (Def.'s 5/4/18 Letter at 4). The Court agrees that much of what plaintiffs have argued in their papers is frivolous and without merit, and that the majority of the objections were not substantially justified. In some narrow respects, however, plaintiffs raised legitimate arguments. Under such circumstances, sanctions are mandatory. See Fed. R. Civ. P. 36(a)(6); Fed. R. Civ. P. 37(a)(5)(A). In light of the innumerable warnings the Court has issued to plaintiffs in the past, sanctions are more than justified. Nonetheless, to permit a sanctions motion at this point would detract attention from the time-sensitive task the Court has set for the parties with respect to the issue of preservation. The Court therefore defers any motion for sanctions until after the Court has finally resolved the issue of preservation. At that time, Allstate may renew its motion for sanctions with respect to plaintiffs' litigation conduct.

Plaintiffs' conduct in this litigation through their various attorneys—including present counsel—has been unacceptable. The Court has repeatedly warned plaintiffs and their various counsel several times, but to no avail. The Court will indulge plaintiffs and their recently-engaged counsel one final time: failure to follow fastidiously the Court's Orders and the Federal Rules of Civil Procedure will result in sanctions. Moreover, plaintiffs' counsel is reminded that the duties of candor to the Court and of civility cannot yield, even to zealous advocacy. Any future failures will result in sanctions. The time for mere admonitions is long over.

## CONCLUSION

For the foregoing reasons, Allstate's motion to continue the preservation Order is granted in part. Specifically, the preservation Order is lifted with respect to the 202 boxes the parties agree may be released. The preservation Order remains in effect with respect to the 58 disputed boxes until further Order of the Court. The parties shall submit expert reports regarding the sufficiency of photographs of the items in the boxes for use at trial within thirty (30) days. Counsel for the parties shall meet and confer regarding whether a sample can be preserved for trial and to attempt to enter into a stipulation regarding exhibits for trial.

Allstate's motion to deem its Requests to Admit admitted is granted in part insofar as Request Nos. 1-11 and 15 are concerned. The motion is denied as to Request Nos. 12-14.

Allstate's motion to compel production of the videos of the inspection is granted. Plaintiffs' cross-motion is granted with respect to photographs taken by Allstate, but denied with respect to the request to compel counsel's notes.

The Court defers ruling on Allstate's motion for sanctions and grants leave to renew after the issue of preservation is resolved.

The Clerk is directed to send copies of this Order to the parties either electronically through the Electronic Case Filing (ECF) system or by mail.

**SO ORDERED.**

Dated: Brooklyn, New York
      June 8, 2018

                          /s/ Cheryl L. Pollak
                         Cheryl L. Pollak
                         United States Magistrate Judge
                         Eastern District of New York