UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x   Case No. 15-cv-5235(ARR)(CLP)
ROBERT TOUSSIE and LAURA TOUSSIE

       Plaintiffs,   PLAINTIFFS' OBJECTION TO
  -against-        MAGISTRATE JUDGE'S REPORT
             AND RECOMMENDATION
ALLSTATE INSURANCE CO.,

       Defendant.
-----------------------------------------------------------------x

  Plaintiffs, Robert Toussie and Laura Toussie, respectfully submit their objections to the Report and Recommendation of Magistrate Judge Pollak dated February 21, 2019 ("Report"). The Report addressed four motions: defendant's April 17, 2018 motion for leave to amend its' Answer to include certain counterclaims, plaintiff's June 15, 2018 motion for leave to file a Second Amended Complaint, defendants's August 2, 2018 motion to compel, and defendant's October 24, 2018 motion for sanctions. The Magistrate Judge recommended that the defendant's motions to amend the Answer to include certain counterclaims, compel the Plaintiffs to provide their tax and sanction the Plaintiffs be granted.

  As discussed more fully below, Plaintiffs respectfully submit that the Record's erroneous legal analysis with regards to those portions of the Report which addressed the motions to amend the Answer to include certain counterclaims, compel the production of the Plaintiffs' tax returns for the years 2012, 2013, 2014 and 2015 and for sanctions warrants its rejection as to those matters.

### FACTUAL BACKGROUND

  Plaintiffs respectfully refer the Court to the Factual Findings set forth in the Report (at pgs. 4-14). However, Plaintiffs vehemently deny any claims of wrongdoing contained therein.

1

**STANDARD OF REVIEW**

Objections to a magistrate judge's report and recommendation should be specific and address only the portions of the proposed findings to which the party objects. Kirk v. Burge, 646F. Supp. 2d 534,538 (S.D.N.Y. 2009). A district judge must determine *de novo* any part of the magistrate judge's disposition to which an objection has been properly filed. 28 U.S.C. § 636(b)(l); Fed. R. Civ. P. 72(b)(3); United States v. Male Juvenile, 121 F.3d 34, 38 (2d Cir. 1997). The court may then "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(l)(c).

**ARGUMENTS**

**POINT 1**

**THE REPORT AND RECOMMENDATION
ERRED IN FINDING THAT THE AMENDMENT
TO THE ANSWER WAS NOT FUTILE**

**A. Legal Standard Concerning Motions to Amend a Pleading.**

Rule 15 of the Federal Rules of Civil Procedure provides that when a party seeks to amend its' pleading beyond the time period allowed for an amendment as a matter of course, that party "may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Thus, absent the opposing party's consent, the Rule requires a party seeking to amend its pleadings to obtain permission from the court before doing so.

As the Report states, "[t]he letter and spirit of Rule 15(a)(2) guide the courts in the exercise of their broad discretion in deciding a motion to amend, and thus 'motions to amend should generally be denied in instances of futility, undue delay, bad faith or dilatory motive, or undue

2

prejudice to the non-moving party.' Burch v. Pioneer Credit Recovery, Inc., 551 F.3d 122, 126 (2d Cir. 2008)(citing Forman v. Davis, 371 U.S. 178, 182 (1962); accord McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 200-01 (2d Cir. 2007). The party opposing the amendment bears the burden of demonstrating good reason to deny the motion. Speedfit, LLC v. Woodway USA, Inc., No. 13 CV 1276, 2015 WL 6143697, at *3 (E.D.N.Y. Oct. 19, 2015)."

**B. The Proposed Amendment to Include Certain Counterclaims is Futile and the Recommendation to Grant the Motion is Error.**

As the Report noted, "[a]n amendment is futile if the proposed pleading would fail to state a claim upon which relief could be granted and thus could not survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). Perfect Pearl Co., Inc. v. Majestic Pearl & Stone, Inc., 889 F. Supp.2d 453, 459 (S.D.N.Y. 2012)(citing Dougherty v. North Hempstead Bd. of Zoning Appeals, 282 F.3d 83, 88 (2d Cir. 2002)). Thus, an amendment is futile if the proposed pleading does not contain sufficient factual matter to 'state a claim to relief that is plausible on its face.' Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)(quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007))...In determining whether the proposed pleading states a plausible claim and therefore would not be futile, this Court must accept as true all well-pleaded factual allegations and must draw all reasonable inferences in favor of the party seeking leave to amend. See DiFolco v. MSNBC Cable, LLC, 622 F.3d 104, 110-11 (2d Cir. 2010); accord 5B Charles A. Wright et al., Federal Practice and Procedure § 1357 (3d ed. 2004)".

Defendant proposed to amend the Answer to include four counterclaims. All of these counterclaims are based upon allegations that the Plaintiffs engaged in misrepresentations with regard to the claims for personal property.

1.  Undisputed Facts.

1. The Policy states that "B. The Concealment or Fraud provision is replaced by the following: Concealment or Fraud Allstate has the right to cancel or non-renew your policy if it was obtained by fraud, material misrepresentation, or concealment of material facts, or if you intentionally conceal any material fact or circumstance before or after a loss. Furthermore, Allstate does not cover you or any other person insured under this policy who has concealed or misrepresented any material fact or circumstance, before or after a loss." (Exhibit A at New York Amendatory Clause, Page 2).

2. "On or about October 29, 2012, the Residence was damaged by Superstorm Sandy". (Exhibit B at ¶ 11[1]).

3. On October 31, 2012 Defendant was notified that the Real Property had been significantly damaged. (Exhibit C).

4. The Defendant acknowledged that it was not aware of the existence of any of the matters alleged in Paragraphs 17-41, if true, until after the institution of this action. (Exhibit B).

5. On April 26, 2013 the Defendant notified the Plaintiffs that the claims which are the subject of this litigation were being "closed". (Exhibit D). At this time the Plaintiffs had not yet submitted any claim documents with regard to the scheduled or unscheduled personal property claims. (Exhibit D; Exhibit E).

6. The allegation contained in Paragraph 16 which stated that "I have made you aware in past prior correspondences that the insureds have lost everything" was made in a letter dated May 7, 2013 (Exhibit D) after the Defendant had notified the Plaintiffs that their claims had been "closed".

---

[1]¶ refers to Paragraphs contained in the Proposed Amended Answer annexed hereto as Exhibit A.

7. The Plaintiffs' made claims under their automobile insurance policy and flood insurance policy which are separate and distinct policies to the policy which is the subject of this litigation. (¶ 43).

8. "In June of 2013, Robert and Laura Toussie retained Anderson Kill LLP ("Anderson") to represent the Toussies with regard to the Toussies' homeowners insurance claims under the Policy". (¶ 44; Exhibit E).

9. As of September 13, 2013 the Plaintiffs had submitted no supporting documentation to the Defendants regarding their scheduled and unscheduled personal property claims. (Exhibit D; Exhibit E).

10. The allegations contained in Paragraphs 44-78, 84-87, 90-211 occurred after the Defendant had "closed" the Plaintiffs' claim and Plaintiffs had retained counsel for the purpose of commencing this litigation. (Exhibit B; Exhibit D).

11. The payments made to the Plaintiffs pursuant to the Policy were the result of negotiated settlements entered into between Plaintiffs and Defendants. Some or all of these settlements were the result of mediation between Plaintiffs and Defendants. (¶¶ 51 and 52).

12. "Plaintiffs did not present the claimed loss of $3,983,221.69 worth of unscheduled personal property claim ('UPP Claim') until February 6, 2015, when Richard Tutwiler presented Exhibit K to Allstate in advance of mediation". (¶ 88).

2. Defendant's Counterclaims Based Upon Actions Allegedly Taken by the Plaintiffs After the Defendant had "Closed" Their Personal Property Claims are Futile.

As early as 1872 the Supreme Court in <u>Republic Fire Insurance Co. v. Weides</u>, 14 Wall. 375, at pages 382-383, 20 L.Ed. 894, ruled that:

> "'It is true the policies stipulated that fraud or false swearing on the part of the assured should work a forfeiture of all claim under them. The false swearing

5

referred to is such as may be in the submission of preliminary proofs of loss, or in the examination to which the assured agreed to submit. But it does not inevitably follow from the fact that there was a material discrepancy between the statements made by the plaintiffs under oath in their proofs of loss, and their statements when testifying at the trial that the former were false, so as to justify the court in assuming it, and directing verdict for the defendants. It may have been that the testimony last given was not true, or the statements made in the proofs of loss may have been honestly made, though subsequently discovered to be mistaken. It is only fraudulently false swearing in furnishing the preliminary proofs, or in the examinations which the insurers have a right to require, that avoids the policies, and it was for the jury to determine whether that swearing was false and fraudulent.' (Emphasis supplied.)"

"The fraud and false swearing clause is one beneficial to the insurer and it reasonably extends to protect the insurer during the period of settlement or adjustment of the claim. When settlement fails and suit is filed, the parties no longer deal on the non-adversary level required by the fraud and false swearing clause. If the insurer denies liability and compels the insured to bring suit, the rights of the parties are fixed as of that time for it is assumed that the insurer, in good faith, then has sound reasons based upon the terms of the policy for denying the claim of the insured." (See, American Paint Serv. v. Home Ins. Co., 246 F.2d 91, 1957 U.S. App. LEXIS 3546, 64 A.L.R.2d (3rd Cir. 1957)

The overwhelming majority rule is that misrepresentations made during litigation never void coverage. American Paint Serv. Inc. v. Home Ins. Co., 246 F.2d 91 (3rd Cir.1957) (American Paint); Mercantile Trust Co. v. New York Underwriters Ins. Co., 376 F.2d 502 (7th Cir.1967); Royal Ins. Co. v. Story, 34 Ala. App. 363, 40 So. 2d 719, cert. den., 252 Ala. 275, 40 So. 2d 724 (1949); Ichthys, Inc. v. Guarantee Ins. Co., 249 Cal.App.2d 555, 57 Cal. Rptr. 734 (Ct. of App.1967); Rego v. Connecticut Ins. Placement Facility, 219 Conn. 339, 593 A.2d 491 (1991); Tarzian v. West Bend Mut. Fire Ins. Co., 74 Ill. App. 2d 314, 221 N.E.2d 293 (1966); Dodson Aviation, Inc., v. Rollins, Burdick, Hunter of Kansas, Inc., 15 Kan. App. 2d 314, 807 P.2d 1319 (1991); Home Ins. Co. v. Cohen, 357 S.W.2d 674 (Ky.Ct. of App.1962); Ocean-Clear Inc. v.

6

Continental Casualty Co., 94 A.D.2d 717, 462 N.Y.S.2d 251 (1983); Halbreich v. Urbaine Fire Ins. Co., 238 A.D. 842, 262 N.Y.S. 742 (1933).

Authorities cite American Paint as the prevailing rule. Annotation, Applicability of fraud and false swearing clause of fire insurance policy to testimony given at trial, 64 A.L.R.2d 962 (1959); 13A Couch on Insurance 2d § 49A:1855A (Rev. ed. 1982); 5A Appleman on Insurance § 3587 (Rev. vol. 1970).

"If the insurer does not establish that the loss falls squarely within a policy exclusion as claimed or otherwise does not constitute a covered loss, the insured is excused from further compliance with its obligations under the policy (id.). '[A]n insurer declines coverage at its own risk' (Park Place Entertainment Corp. v Transcontinental Ins. Co., 225 F Supp 2d 406, 413 [SD NY 2002])."

This rule of law is, likewise, true in New York. In Ocean-Clear, Inc. v. Continental Casualty Co., 94 A.D.2d 717, 462 N.Y.S.2d 251, [2d Dept. 1983) that Court held that:

> "Ordinarily, an insurer may assert as an affirmative defense the breach of the standard willful concealment or misrepresentation clause by its assured (Insurance Law, § 168; Saks & Co. v Continental Ins. Co., 23 NY2d 161). Once an insurer repudiates liability, however, the assured is excused from any of its obligations under the policy (Lentini Bros. Moving & Stor. Co. v New York Prop. Ins. Underwriting Assn., 53 NY2d 835; Sherri v National Sur. Co. of N. Y., 243 NY 266; Beckley v Otsego County Farmers Coop. Fire Ins. Co., 3 AD2d 190, app dsmd 2 NY2d 990) and therefore it is generally accepted that fraud arising after the commencement of an action on a policy does not void the policy (see, e.g., Halbreich v Travelers Fire Ins. Co., 238 App Div 841; Mercantile Trust Co. v New York Underwriter's Ins. Co., 376 F2d 502; American Paint Serv. v Home Ins. Co. of N. Y., 246 F2d 91; Home Ins. Co. v Cohen, 357 SW2d 674 [Ky]; Tarzian v West Bend Mut. Fire Ins. Co., 74 Ill App 2d 314)."

In Am. Ref-Fuel Co. v. Res. Recycling, Inc., 281 A.D.2d 573, 722 N.Y.S.2d 570 (2d Dept. 2001) it was held that "[a]n insured's failure to comply with its obligations under an insurance policy is generally a defense to an action on the policy (see, Rajchandra Corp. v Title Guar. Co.,

163 AD2d 765, 768-769). However, "an insurer cannot insist upon cooperation or adherence to the terms of its policy after it has repudiated liability on the claim … by sending a letter denying liability" (Rajchandra Corp. v Title Guar. Co., supra, at 769). Thus, "[o]nce an insurer repudiates liability … the [in]sured is excused from any of its obligations under the policy" (Ocean-Clear, Inc. v Continental Cas. Co., 94 AD2d 717, 718)

Here, the Defendant alleges that the Plaintiffs made a misrepresentation for the first time more than a year after the proof of loss had been filed and after the Defendant had "closed" the Plaintiffs claim and the Plaintiffs had been compelled to hire counsel in order to protect their rights under the Policy.

Since the letter "closing" the claim served as a repudiation of the Defendant's liability, Plaintiffs were excused from further compliance with its obligations under the policy. Consequently, the Defendant cannot rely on any alleged misrepresentations made by client after they had done so.

Inasmuch as the allegations made in the proposed Answer allege misrepresentations by the Plaintiffs after the Defendant had "closed" the claim and the Plaintiffs retained counsel, these allegations cannot be relied upon by the Defendant to vitiate the policy or form the basis of breach of contract claims. Therefore, the Report should have recommended that the motion to amend the Answer to include certain counterclaims should not be granted as such amendment is futile.

3.  There is No Authority in the Policy for the Contract to "Vitiate" in the Event Fraud or Concealment is Discovered or for the Disgorgement of Payments Made Under Other Losses.

Under the first and third proposed counterclaims the Defendant seeks to have the Policy vitiated and payments made under the Policy disgorged. As more fully set forth hereinbelow, in order for the Defendant to have such a claim, it must obtain such authority from the Policy. However, nothing within the Policy allows for the entire Policy to be vitiated or for reimbursement

8

of any claims paid prior to the alleged misrepresentation.

In <u>Fiore v. State Farm Fire & Casualty Co.</u>, 135 A.D.2d 602, 522 N.Y.S.2d 180 (2d Dept. 1987), that Court held that in order for a policy to become void in the event of fraudulent misrepresentation or concealment the Policy must specifically state that potentiality. Where "[t]he clause is ambiguous [it] should be construed to favor the insured (see, <u>North Riv. Ins. Co. v Good Morning Farms</u>, 105 AD2d 1095, appeal discontinued 65 NY2d 812).

While the Defendant attempts to read the fraud or concealment provision in the New York Amendatory Clause of the Policy as requiring the disgorgement of any payments made under the policy, this theory, likewise, is nowhere found in the Policy itself nor is it available under New York law. Nor is the Defendant's authority to conflate the two "losses" suffered by the Plaintiffs, as it is attempting to do here, found therein.

Here, the Plaintiffs experienced a loss involving damage to their dwelling during Superstorm Sandy. This is a distinct "occurrence" which resulted in "Property Damage" as those terms are defined by the Policy. The Plaintiffs then experienced a second loss cause by "theft". While these two distinct losses occurred at the same place and relatively close in time, they are not the same "loss".

Even if it were true that the Plaintiffs engaged in some sort of fraud or concealment as that term is defined in the Policy, there is no authority whatsoever for the Defendant to recover payment made to the Plaintiffs under a separate and distinct claim for loss for damage to the real property. Here, the policy states that it, in the event of fraud or concealment, Defendant will not "cover you". The policy is silent as to how claims previously paid under the policy will be treated. Instead, the policy only provides that the Defendant is entitled to recover payments made through subrogation of an insured's rights of payment from a third party. (Exhibit A at Page 20, Paragraph 10).

Since the Policy is ambiguous as to the Defendant's rights in the event of an alleged fraud or concealment, it must be "construed to favor the insured." Accordingly, the Defendant's first and third proposed counterclaims are deficient as a matter of law and the Report erred in recommending that the motion to amend to include this proposed counterclaim.

Moreover, attorneys fees paid by Defendant in connection with this suit are not recoverable in this action. Under New York law, "attorneys' fees and disbursements are incidents of litigation and the prevailing party may not collect them from the loser unless an award is authorized by agreement between the parties or by statute or court rule.' Matter of A.G. Ship Maintenance Corp. v Lezak, 69 NY2d 1, 5, 503 N.E.2d 681, 511 N.Y.S.2d 216 (1986).We conclude, however, that to award fees to plaintiffs would be to contradict New York's well-established adoption of the American Rule that 'the prevailing litigant ordinarily cannot collect...attorneys' fees from its unsuccessful opponents' (Hunt v Sharp, 85 NY2d 883, 885, 649 NE2d 1201, 626 NYS2d 57 [1995]). Contrary to Supreme Court, the standard is not which party was 'more responsible' for the litigation. Attorneys' fees are treated as 'incidents of litigation' (Matter of A.G. Ship Maintenance Corp. v Lezak, 69 NY2d 1, 5, 503 NE2d 681, 511 NYS2d 216 [1986]), rather than damages. 'In contrast with other legal systems, such as that in Great Britain, it has now long been the universal rule in this country not to allow a litigant to recover damages for the amounts expended in the successful prosecution or defense of its rights' (Mighty Midgets v Centennial Ins. Co., 47 NY2d 12, 21-22, 389 NE2d 1080, 416 NYS2d 559 [1979]). The exception is when 'an award is authorized by agreement between the parties or by statute or court rule' (Mount Vernon City School Dist. v Nova Cas. Co., 19 NY3d 28, 39, 968 NE2d 439, 945 NYS2d 202 [2012], quoting A.G. Ship Maintenance Corp., 69 NY2d at 5)."

Here, the Policy is silent as to attorneys fees to either party in the event of litigation. (Exhibit

A at New York Amendatory Clause, Page 3). Accordingly, the Defendant cannot recover their attorneys fees and costs and the Report should not have recommended the amendment to the Answer to the extent the Defendant attempts to recover same.

<u>4.  New York has Adopted the "Innocent Insured" Rule and the Proposed Counterclaims are Futile to the Extent They Seek to Avoid Liability Against an Innocent Insured.</u>

The defendant's claim that alleged misrepresentations by one insured would void the policy as to the other is, likewise, unavailing.  In <u>Azzato v Allstate Ins. Co.</u>, 99 A.D.3d 643, 951 N.Y.S.2d 726, (2d Dept. 2012) that Court held that "the concealment and fraud provision of the policy only barred recovery from a named insured 'who has concealed or misrepresented any material fact or circumstances.' Accordingly, this clause only serves to vitiate the coverage of a named insured who has actually engaged in misrepresentation (see <u>Krupp v Aetna Life & Cas. Co.</u>, 103 AD2d 252, 261, 479 NYS2d 992 [1984]; cf. <u>Lane v Security Mut. Ins. Co.</u>, 96 NY2d 1, 5, 747 NE2d 1270, 724 NYS2d 670 [2001]).

In <u>Lane v. Sec. Mut. Ins. Co.</u>, 96 N.Y.2d 1, 747 N.E.2d 1270, 724 N.Y.S.2d 670, (2001), the New York Court of Appeals held that a policy cannot "impermissibly restrict[] the coverage mandated by statute and afforded the innocent insured (Insurance Law § 3404; <u>Reed v Federal Ins. Co.</u>, 71 NY2d 581). The New York standard fire insurance policy is codified in Insurance Law § 3404 (e). Any policy that insures against the peril of fire must incorporate 'terms and provisions no less favorable to the insured than those contained in the [standard policy]' ( Insurance Law § 3404 [f] [1] [A])."

To the extent the Policy may seek to deny claims as against an innocent insured, it is void as against public policy and the proposed amended Answer should be disallowed to the extent it seeks to enforce this provision.  Therefore, the Report should have recommended that the motion to amend

11

the Answer to include certain counterclaims should not be granted as such amendment is futile.

# POINT 2

## THE REPORT AND RECOMMENDATION

### ERRED IN FINDING THAT THE PLAINTIFFS SHOULD BE COMPELLED TO PROVIDE THEIR TAX RETURNS SINCE SAME ARE IRRELEVANT TO THE CASE AT BAR

Courts are generally reluctant to order the production of personal financial documents and have imposed a heightened standard for the discovery of tax returns. See Chen v. Republic Rest. Corp., No. , 07 CV 3307, 2008 U.S. Dist. LEXIS 24000, 2008 WL 793686 at *2 (S.D.N.Y. Mar. 26, 2008) (citing Smith v. Bader, 83 F.R.D. 437, 438 (S.D.N.Y. 1979) (holding that "[a]lthough tax returns are not privileged documents, Court[s] are reluctant to order their discovery in part because of the 'private nature of the sensitive information contained therein, and in part from [sic] the public interest in encouraging the filing by taxpayers of complete and accurate returns'").

A party seeking to compel production of tax returns in civil cases must meet a two-part showing that: "(1) the returns must be relevant to the subject matter of the action and (2) there must be a compelling need for the returns because the information is not 'otherwise readily obtainable.'" Carmody v. Village of Rockville Centre, No. 05 CV 4907, 2007 U.S. Dist. LEXIS 50933, 2007 WL 2042807 at *2 (E.D.N.Y. July 13, 2007) (citing United States v. Bonanno Family of La Cosa Nostra, 119 F.R.D. 625, 627 (E .D.N.Y. 1988)).

Here, the Defendant allegedly seeks four years of tax returns from the Plaintiffs based upon its' argument that, since Mr. Toussie allegedly made a claim that the "IRS could verify that [he] lost

over $50 million dollars' in connection with Superstorm Sandy", he somehow put his tax returns at issue. Obviously, inasmuch as the claim of loss by the Plaintiffs in this action are significantly less than $50 million dollars, there is no reason to review the Plaintiffs tax returns to confirm this claim.

Instead, the Defendant seeks to obtain the Plaintiffs' tax returns not to discover anything relevant to the facts at issue herein but, rather, to attempt to establish that Mr. Toussie may have been inaccurate. The Defendant's claim that these tax returns may contain "the identity of property that was lost by the Toussies, the value of such property, and the insurance coverage for such property" is belied by the United States tax code itself. Generally, you may deduct casualty and theft losses relating to your home, household items, and vehicles on your federal income tax return due to a federally declared disaster area by the President. The Internal Revenue Service advises that "[y]ou may not deduct casualty and theft losses covered by insurance, unless you file a timely claim for reimbursement and you reduce the loss by the amount of any reimbursement or expected reimbursement."

Moreover, in making such a deduction you must reduce your cost basis, not the current value of the property, by the amount you expect to receive from insurance, "subtract $100 from each casualty or theft event that occurred during the year after you've subtracted any salvage value and any insurance or other reimbursement. Then add up all those amounts and subtract 10% of your adjusted gross income from that total to calculate your allowable casualty and theft losses for the year." (Exhibit E).

The value of any loss under this formula would bear little resemblance to the value of the items under the Policy and, in the event the calculated tax loss is less than the value of the expected insurance proceeds, these losses could not even be included on the Plaintiffs' tax returns.

Moreover, the Defendant has already deposed both Plaintiffs regarding these very issues.

13

Since this information was readily obtainable from both Plaintiffs, the Defendant cannot compel the production of their tax returns.  Accordingly, the Report erred in recommending that the motion to compel be granted.

Even if this Court were to determine that the Plaintiffs tax returns were at issue, the Report recommended that the Plaintiffs provide tax returns for 2012, 2013, 2014 and 2015. Inasmuch as a loss such as this can only be claimed in the year in which the loss occurred (ExhibitE), at most the Plaintiffs should be directed to turn over only their 2012 tax returns.

## POINT 3

### THE REPORT AND RECOMMENDATION ERRED IN SANCTIONING THE PLAINTIFFS

This Court must review recommendation to sanction the Plaintiffs under the "clearly erroneous or contrary to law" standard of review. Id.; see <u>Fonseca v. Columbia Gas Systems</u>, 37 F. Supp. 2d 214, 218 (W.D.N.Y. Sept. 17, 1998). This standard affords magistrate judges broad discretion in resolving non-dispositive disputes, thus reversal is appropriate only if the discretion is abused. See <u>Thomas E. Hoar Inc. v. Sara Lee Corp.</u>, 900 F.2d 522, 525 (2d Cir. 1990).

Here, the Magistrate Judge erred in recommending that the Plaintiffs be sanctioned for failure of a non-party to appear at a deposition.  The Magistrate Judge also erred in recommending that the Plaintiffs pay unreasonable monetary sanctions.

<u>A.  Plaintiffs Cannot be Compelled to Pay Sanctions for the Failure of a Non-Party to Appear for a Deposition.</u>

In <u>Flaks v. Koegel</u>, 504 F.2d 702 (2d Cir. 1974), the Second Circuit determined that a party can be ordered to pay monetary sanctions under Rule 37 for the failure of a non-party to appear at a deposition where there is a virtual identity of interest between the party to be sanctioned and the non-party who failed to appear.  Id. at 710 n.6 (citations omitted).

In PrecisionFlow Techs. v. CVD Equip. Corp., 198 F.R.D. 33 (N.D.N.Y. 2000), that Court held that a party could only be sanctioned for a non-party's non-appearance at a deposition where the party had "assumed responsibilty" of the appearance of the non-party witnesses. (See also, In re Keystone Foods, Inc., 134 B.R. 828 (Bankr. W.D. Pa. 1991); 24 Hour Fitness U.S.A., Inc. v. 24/7 Tribeca Fitness, L.L.C. (S.D.N.Y. 2006 U.S. Dist. LEXIS 46063, 2006 WL 1881763"[S]anctions may be imposed upon a party or its counsel under Rule 37(d) for the nonappearance of a witness who is not an officer, director or managing agent or had been designate as a representative of a party for any other purpose if the party assumed responsibility for the appearance of the witness at the deposition."

Here, there was no finding that the Plaintiffs had control over the non-party witness nor had they assumed any responsibility for her appearance at a deposition. Accordingly, the Report erred in recommending that the Plaintiffs be sanctioned by reimbursing the Defendant for the cost of their counsel's appearance at the cancelled deposition.

B. The Monetary Sanctions are Unreasonable.

In Bey v. City of New York, 2007 U.S. Dist. LEXIS 44202 (S.D.N.Y. 2007) it was held that "[t]he amount of attorney's fees to be charged to defendants for their violation of Rule 37(d) shall be determined by the lodestar analysis, whereby the number of billable hours are multiplied by counsel's reasonable billing rate. See LeBlanc-Sternberg v. Fletcher, 143 F.3d 748, 763-64 (quoting Hensley v. Eckerhart, 461 U.S. 424, 433, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983)).

Among the factors the Court should consider in determining whether this rate is reasonable are "prevailing [rates] in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." Gierlinger v. Gleason, 160 F.3d 858, 882 (2d Cir. 1998) (quoting Blum v. Stenson, 465 U.S. 886, 896 n. 11, 104 S. Ct. 1541, 79 L. Ed. 2d 891 (1984)).

In *Bey*, that Court found that "the time spent preparing for a deposition should reflect the amount of relevant information possessed by the deponent. The Court finds that a reasonable number of billable hours is five (5) hours per deponent..."

Here, however, the Report recommended that the Defendant be paid 10.5 hours of preparation time for the deposition of the non-party who failed to appear at the original scheduled deposition.

With regard to the Second Motion to Compel, the Defendants sought fees for partner Robert King for 6 hours billed at $450.00; senior association Brendan Zahner for 12.8 hours billed at $300.00, first year associate Stacey Petrek for 29.1 hours billed at $200 per hour, and paralegal Patrice Ho Sang for 1.9 hours billed at $100 per hour. The Report recognized that the motion for which the Defendant's counsel sought in excess of 49 hours of reimbursement was a "four-page Motion and three-page Reply". While the Report recommended a 50% reduction in hours spent by first year associate Stacey Petrek and a 15% reduction in the hours of the others, it still awarded $8,645.00 for what amounts to 7 pages of work product. This award is clearly unreasonable given that the motion was for relatively common issues and could not possibly have required 25 hours worth of work, let alone the 49 hours the Defendant's counsel sought reimbursement for.

In <u>Kerr v. Am. Airlines, Inc.</u>, 2018 U.S. Dist. LEXIS 61590, 2018 WL 1747039 (S.D.N.Y. 2018) that Court held that "[i]t would be excessive to grant fees for two attorneys" for relatively straightforward work performed. Clarke v. Hudson Valley Fed. Credit Union, No. 14-CV-5291, 2016 U.S. Dist. LEXIS 29475, 2016 WL 884667, at *9 (S.D.N.Y. Mar. 8, 2016)."

Accordingly, the Report erred in recommending that the Plaintiffs reimburse the Defendant for any costs associated with the non-party witness's non-appearance at the first scheduled

16

deposition and $8,645.00 for the 7 pages of work involved in the Second Motion to Compel.

## CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court reject the Report to the extent that it recommended granting the Defendant's motion to amend the Answer to include certain counterclaims, directed the Plaintiffs to disclose their tax returns and awarded monetary sanctions, and award them such other and further relief as the Court deems just and proper.

Dated:　March 6, 2019
　　　　　Nesconset, New York

　　　　　　　　　　　　　　　　　　Yours, etc.

　　　　　　　　　　　　　　　　　　/s/Fredrick P. Stern
　　　　　　　　　　　　　　　　　　SCHEYER & STERN, LLC
　　　　　　　　　　　　　　　　　　Fredrick P. Stern, Esq.
　　　　　　　　　　　　　　　　　　110 Lake Avenue So., Suite 46
　　　　　　　　　　　　　　　　　　Nesconset, New York 11767
　　　　　　　　　　　　　　　　　　(631) 265-8500
　　　　　　　　　　　　　　　　　　scheyerstern@gmail.com