UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

ROBERT AND LAURA TOUSSIE,

                Plaintiffs,

      v.

ALLSTATE INSURANCE COMPANY,

            Defendant.

Civ. No.: 15-cv-05235 (ARR)(PK)

**DEFENDANT'S RESPONSE TO PLAINTIFFS' OBJECTION TO MAGISTRATE
JUDGE POLLAK'S FEBRUARY 6, 2019 REPORT AND RECOMMENDATION**

**DENTONS US LLP**
Gary Meyerhoff
Brendan E. Zahner
1221 Avenue of the Americas
New York, New York 10020-1089
Tel:   (212) 768-6700
Fax:   (212) 768-6800

gary.meyerhoff@dentons.com
brendan.zahner@dentons.com

*Counsel for Defendant*

## <u>TABLE OF CONTENTS</u>

**Page**

TABLE OF AUTHORITIES ...................................................................................... ii

INTRODUCTION AND PROCEDURAL BACKGROUND ........................................1

ARGUMENT .............................................................................................................3

I.     Standard Of Review And The Court's Consideration Of New Arguments.....................3

II.    The Court Should Adopt The Report's Recommendation To Grant Allstate Leave To Amend Its Answer And Include The Counterclaims ..................................................4

     A.    Plaintiffs Were Not Relieved Of Their Contractual Duties By Any Allstate Repudiation Of Coverage, As Of April 26, 2013 Or Otherwise...........................5

          1.    Allstate Did Not Repudiate the Coverage at Issue in April 2013 ...............5

          2.    The Counterclaims Are Not Based Only On Post-Litigation Conduct ...................................................................................................7

          3.    In Any Event, Post-Litigation Fraud *Can* Void Coverage..........................8

     B.    The "Innocent Insured" Rule Cannot Apply In This Action ..................................9

     C.    Attorneys' Fees Are Recoverable For Bad Faith, And The Request For Such Relief Does Not In Any Event Render The Counterclaims Futile................10

     D.    Plaintiffs' Violation Of The Misrepresentation And Concealment Clause Does Vitiate All Of Their Coverage Under The Policy........................................12

III.   The Court Should Adopt The Report's Finding On The Production Of Tax Records ......15

IV.   The Report's Sanctions Award Should Be Adopted; It Is Not Clearly Erroneous............18

CONCLUSION.........................................................................................................20

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*,
    421 U.S. 240 (1975)..................................................................................................10

*American Paint Service v. Home Insurance Co.*,
    246 F. 2d 91 (3rd Cir. 1957) ................................................................................5, 7, 8

*Astoria Quality Drugs, Inc. v. United Pacific Ins. Co.*,
    163 A.D.2d 82 (1st Dep't 1990) .............................................................................14

*C. Cubed, Inc. v. General Accident Insurance Co. of America*,
    No. CV–86–1546 (ILG), 1988 WL 86686 (E.D.N.Y. Aug. 17, 1988).............................14, 15

*Cortec Indus. Inc. v. Sum Holding, LP*,
    949 F.2d 42 (2d Cir. 1991)......................................................................................6

*F. D. Rich Co., Inc. v. United States ex rel. Indus. Lumber Co., Inc.*,
    417 U.S. 116 (1974)................................................................................................10

*Fiore v. State Farm Fire & Casualty Co.*,
    135 A.D.2d 602 (2d Dep't 1987) ............................................................................14

*Fortgang v. Pereiras Architects Ubiquitous LLC*,
    16-cv-3754 (ADS) (AYS), 2018 WL 1505564 (E.D.N.Y. Mar. 27, 2018) .............................4

*Garcia v. Paris Maint.*,
    15-CV-0663 (SJF), 2016 WL 3093895 (E.D.N.Y. June 1, 2016) ............................................3

*Illis v. Artus*,
    No. 06-CV-3077 (SCT) (KAM), 2009 WL 2730870 (E.D.N.Y. Aug. 28, 2009).....................4

*LaSalle Bank Nat'l Ass'n v. Nomura Asset Capital Corp.*,
    424 F.3d 195 (2d Cir. 2005)....................................................................................13

*Louis v. Metro. Transit Auth.*,
    No. 12-CV-6333 (ILG), 2014 WL 5311455 (E.D.N.Y. Oct. 16, 2014) ...................................3

*Mauro v. Travelers Ins. Co.*,
    107 A.D.2d 1017 (4th Dep't 1985)..........................................................................8

*Mohr v. United Cement Mason's Union Local 780*,
    15 Civ. 4581 (AMD) (CP), 2017 WL 1187690 (E.D.N.Y. Mar. 30, 2017) .............................3

*Ocean-Clear, Inc. v. Continental Cas. Co.*,
    94 A.D.2d 717 (2d Dep't 1983) ............................................................................8

*Oliveri v. Thompson*,
    803 F.2d 1265 (2d Cir.1986)................................................................................11

*Power Up Lending Grp., Ltd. v. Nugene Int'l, Inc.*,
    17-CV-6601 (SJF) (AKT), 2019 WL 989750 (E.D.N.Y. Mar. 1, 2019) ..................4

*Schlaifer Nance & Co., Inc. v. Estate of Warhol*,
    194 F.3d 323 (2d. Cir. 1999)..........................................................................10, 11

*Wingates, LLC v. Commonwealth Ins. Co. of Am.*,
    21 F. Supp. 3d 206 (E.D.N.Y. 2014) ...................................................................9

*Zachary v. City of Newburgh*,
    No. 13 CV 5737 (VB), 2015 WL 5474245 (S.D.N.Y. July 27, 2015) ....................3

**Other Authorities**

Fed. R. Civ. P. 72(a) ..................................................................................................3

Fed. R. Civ. P. 72(b)(3)..............................................................................................3

## INTRODUCTION AND PROCEDURAL BACKGROUND

Plaintiffs Robert and Laura Toussie filed this action against Allstate in September 2015, seeking coverage under their Allstate Deluxe Plus Homeowners policy (the "Policy").   Their legal claims rest on allegations that personal property worth millions of dollars had been stolen from their damaged house after Superstorm Sandy ("Sandy").   Before this action was filed, Allstate had investigated and paid Plaintiffs approximately $1.15 million on other Sandy-related claims:   for wind damage, the loss of property damaged by a fallen tree, living expenses, and the loss of more than $365,000 in itemized, scheduled personal property ("SPP").   In February 2015, two and a half years after Sandy, Plaintiffs first advised Allstate of the additional alleged theft of $3.9 million worth of *unscheduled* personal property ("UPP").   Plaintiffs now seek coverage for these losses up to the Policy's $1.6 million limit (the "UPP" or "Theft" claim).

Back in 2015, Allstate asked Plaintiffs to sit for examinations under oath on their then-new UPP claim, but Plaintiffs filed this action instead, in the middle of Allstate's investigation. Plaintiffs and their agents repeatedly have represented -- first to Allstate and then to this Court -- that Plaintiffs had "lost everything" to either wind, storm surge or theft.

Plaintiffs did not lose everything.   During discovery, Allstate uncovered that Plaintiffs had hired a security company to guard their purportedly empty, looted house.   Allstate learned that Plaintiffs had engaged in a massive, post-Sandy packing and moving operation, aided by their longtime housekeeper, sending over 190 boxes of personal property to Christies' Fine Arts Storage Service ("CFASS").   As Magistrate Judge Pollak's 62-page Report and Recommendation (the "Report," Dkt. 249) reflects, Plaintiffs have gone through five law firms, engaged in vexatious litigation tactics, and offered an ever-changing story in a desperate attempt to conceal what was in those boxes.

Allstate ultimately learned that 84 of the boxes were removed from CFASS just three weeks before this suit was filed, signed for by Plaintiff Laura Toussie.    The whereabouts and contents of those boxes remain unaccounted for.    Through Orders issued by Magistrate Judge Pollak, who has become familiar with the facts and Plaintiffs' tactics over three years of litigation, Allstate ultimately obtained access to the boxes that could still be located at CFASS. Allstate found personal property therein which matches certain items for which Plaintiffs were already paid on their SPP claim *and* items for which Plaintiffs continue to press for coverage in this action through their UPP Claim.    Plaintiffs' misrepresentations, concealments, and failure to cooperate all violate the Policy's clear and unambiguous terms and vitiate Plaintiffs' coverage.

The Report recommends that Allstate be granted leave to amend its Answer to add counterclaims that seek declarations of no coverage and the return of funds Allstate already paid to Plaintiffs.    Plaintiffs' pending Objection To Magistrate's Report And Recommendation ("Obj.", Dk. 254) makes multiple arguments -- including three arguments not previously presented -- that the counterclaims, or aspects of them, are futile.    Plaintiffs also object to two other Report recommendations:    being compelled to produce portions of their tax returns and being sanctioned for, among other things, interfering with their housekeeper's deposition.[1]

Plaintiffs' Objection arguments are based on a variety of patent factual and legal errors. They argue for the wrong standard of review.    They completely ignore Allstate's counterclaim allegations, even though they admit those allegations must be treated as true on a motion for leave to amend.    And they falsely report other facts.    For example, Plaintiffs' main "futility" argument rests on the demonstrably false contention that Allstate repudiated coverage under the

---

[1]  Plaintiffs do not object to the Report's denial of their own motion to amend, nor to the rulings compelling interrogatory responses and sanctioning Plaintiffs for not disclosing their housekeeper's name and for evading other Allstate discovery demands.    (Report, Dk. 249, pp. 27-39, 39-42, 43-48, 50-51.)

Policy in 2013.   The actual Allstate letter Plaintiffs refer to, but fail to provide to the Court, proves otherwise.   Plaintiffs also falsely contend that producing tax records is unnecessary because Plaintiffs have already been deposed on the tax issues, but Plaintiffs' depositions have not yet been taken.   For these and other many other reasons, Plaintiffs' Objection should be rejected and the Report should be adopted by the Court in its entirety.

## ARGUMENT

### I.   Standard Of Review And The Court's Consideration Of New Arguments

Plaintiffs wrongly argue for a *de novo* standard of review for the entire Report, but they rely on Fed. R. Civ. P. 72(b)(3), the rule for *dispositive* motions.   Review of a Magistrate Judge's recommendations on non-dispositive motions is governed by a different rule, Fed. R. Civ. P. 72(a):   such recommendations may be modified or set aside only when the order is "clearly erroneous" or "contrary to law."   The motions at issue here -- to amend a pleading, to compel discovery, and for sanctions -- are non-dispositive.[2]   Factual findings are "'clearly erroneous only when the reviewing court on the entire evidence is left with definite and firm conviction that a mistake has been committed.'"   *Zachary v. City of Newburgh*, No. 13 CV 5737 (VB), 2015 WL 5474245, at *1 (S.D.N.Y. July 27, 2015) (citation omitted).   Many of the Report's recommendations rest on factual findings, but Plaintiffs do not even attempt to explain why any of those findings are clearly erroneous.

---

[2]  Courts in this district have held, appropriately, that only the *denial* of a motion for leave to amend a pleading should be considered dispositive because a denial effectively precludes a claim, while granting a motion for leave to amend does not and is thus non-dispositive.   *See Mohr v. United Cement Mason's Union Local 780*, 15 Civ. 4581 (AMD) (CP), 2017 WL 1187690 *1 (E.D.N.Y. Mar. 30, 2017), citing *Garcia v. Paris Maint.*, 15-CV-0663 (SJF), 2016 WL 3093895, at *1 (E.D.N.Y. June 1, 2016); *Louis v. Metro. Transit Auth.*, No. 12-CV-6333 (ILG), 2014 WL 5311455, at *1 (E.D.N.Y. Oct. 16, 2014).

In addition, three of Plaintiffs' four arguments on the counterclaims are completely new, presented for the first time in their Objection to the Report.    Permitting new arguments on an objection undermines the efficiency and purpose of having a Magistrate Judge consider and rule on motions and, accordingly, there is ample authority to support not even considering them. *See, e.g., Power Up Lending Grp., Ltd. v. Nugene Int'l, Inc.*, 17-CV-6601 (SJF) (AKT), 2019 WL 989750 *1 (E.D.N.Y. Mar. 1, 2019); *Illis v. Artus*, No. 06-CV-3077 (SCT) (KAM), 2009 WL 2730870, at *1 (E.D.N.Y. Aug. 28, 2009).    Other recent decisions of this Court have used a multi-part test to determine whether to consider new arguments.    *See Fortgang v. Pereiras Architects Ubiquitous LLC,* 16-cv-3754 (ADS) (AYS), 2018 WL 1505564 (E.D.N.Y. Mar. 27, 2018) (applying six-factor test on whether to consider new arguments).

The Court certainly has the discretion to ignore Plaintiffs' new arguments on this record: Plaintiffs fail to inform the Court which arguments are new, they offer no rationale for why such arguments were not previously presented, and they have been warned (and now sanctioned) by the Court for their vexatious and duplicative litigation conduct in the past.    But Allstate has a practical concern with a ruling on purely procedural grounds.    Should the Court decline to consider the merits of the new arguments, Plaintiffs are likely to present them again on a motion to dismiss the counterclaims, leading to duplicative additional briefing.    Allstate does not concede that any such motion to dismiss would be proper, but respectfully suggests that a merits-based ruling on the new arguments could serve to cut off further needless motion practice.

II.     **The Court Should Adopt The Report's Recommendation To Grant**
       **Allstate Leave To Amend Its Answer And Include The Counterclaims**

The Policy's "Misrepresentation and Concealment Clause" provides:

> [Allstate will] not cover you or any other person insured under this policy
> who has concealed or misrepresented any material facts or circumstances,
> before or after a loss.

4

(Countercl. ¶ 81.)    Allstate's counterclaims rest on Plaintiffs' violation of this clause, as well as on the Policy clause requiring them to "cooperate and assist Allstate in any matter concerning a claim or suit."    *Id.,* ¶¶ 8, 240.    In the Report, the Magistrate rejected multiple arguments that the counterclaims are futile or presented in bad faith.    (Report, Dk. 249, pp. 15-26.)

Plaintiffs' Objection makes three new arguments, and an already rejected one, in challenging Allstate's four proposed counterclaims in whole or in part:    (i) the counterclaims are all futile because Plaintiffs' contractual obligation to cooperate and to not misrepresent facts ended on April 26, 2013, before this litigation, when Allstate purportedly repudiated Plaintiffs' personal property claims; (ii) the counterclaims are all barred by the "innocent insured" rule; (iii) Allstate cannot seek attorney fees as damages; and (iv) as argued previously, the third counterclaim is futile to the extent it seeks to vitiate Plaintiff's insurance coverage for claims on which Plaintiffs are not alleged to have committed fraud.    None of these arguments has merit.

### A.    Plaintiffs Were Not Relieved Of Their Contractual Duties By Any Allstate Repudiation Of Coverage, As Of April 26, 2013 Or Otherwise

#### 1.    Allstate Did Not Repudiate the Coverage at Issue in April 2013

Plaintiffs argue for the first time in their Objection that under *American Paint Service v. Home Insurance Co.,* 246 F. 2d 91 (3rd Cir. 1957), if an insurer repudiates liability under the policy, the insured is relieved of his/her obligations under the policy's fraud provisions. Plaintiffs argue that the counterclaims are futile because Allstate repudiated coverage under the Policy on April 26, 2013, before the alleged fraudulent conduct occurred.    (Obj., Dk. 254, pp. 5-8.)    This argument rests on a serious misrepresentation; Allstate did not repudiate coverage in April 2013.

Plaintiffs assert that Allstate notified the Plaintiffs on April 26, 2013 that "the claims which are the subject of this litigation were being 'closed'" and treat that notification as a

repudiation.   *Id.,* p. 4.   As support, Plaintiffs cite a letter from their own public adjuster which

interprets Allstate's April 26, 2013 letter as supposedly "closing" the claim.   (Obj. Ex. D, Dk.

254-4.)   The April 26, 2013 letter itself belies that interpretation:

> This letter will serve as notification that this claim is being closed due to
> lack of interest.   The claim may be reopened at a later date once the
> requested information has been provided to the adjuster.

April 26, 2013 letter, Ex. 1.[3]   Allstate did not definitively close or repudiate coverage in 2013.

This letter reflects an administrative closing only, one that expressly gave Plaintiffs the right to

have the claim re-opened "at a later date."   Plaintiffs not only mischaracterize Allstate's letter,

but present this misrepresentation to the Court as an "undisputed fact."   (Obj., Dk. 254, p. 4.)

In any event, Plaintiffs' contention that Allstate repudiated their coverage in 2013

cannot be squared with their own contrary admissions and the facts pleaded in the proposed

counterclaim.   As Plaintiffs themselves admit in their Amended Complaint, re-opening the

claims "at a later date" is exactly what happened:

> Between 2012 *and April 2015*, the claims for wind damage, architectural
> features, fine arts and additional living expenses were sequentially
> addressed by the parties and were eventually paid by Allstate -- one after
> the next.

(Am. Compl., Dk. 48, ¶17 (emphasis added).)   And Plaintiffs admit in their Objection that they

did not even *present* their Theft claim until February 6, 2015.   (Dk. 254, p. 5.)   Plaintiffs'

current assertion that Allstate repudiated their claims in April 2013 contradicts their admissions

that all of their claims either were settled or presented long after that date.

---

[3]  Ex. 1 is attached to the accompanying Transmittal Declaration of Brendan Zahner.   Allstate includes it
to refute the false factual assertion Plaintiffs advance in their Objection.   The Court can also treat the
Allstate letter (Ex. 1) as part of the record at the pleadings stage because it is incorporated by reference in
Plaintiff's adjuster's letter (Obj., Ex. D, Dk. 254-4), although incompletely.   Plaintiffs' adjuster's letter
is attached as an Exhibit to the proposed counterclaims, Dk. 174-5, Ex. C.)   Documents incorporated by reference in a pleading can be considered on a motion to
dismiss.   *Cortec Indus. Inc. v. Sum Holding, LP*, 949 F.2d 42, 44 (2d Cir. 1991).

The counterclaim allegations also make clear that Allstate did not disclaim or repudiate coverage in 2013 or at any time.   Allstate *provided* coverage to Plaintiffs under the Policy, except as to the UPP claim, and Plaintiffs filed this action before Allstate completed its investigation into the UPP claim.   (Dk. 174-2 at ¶¶ 50-52, 106-108.)   As a result, Allstate never denied the UPP claim and was "forced to continue investigating as best it could within the context of the litigation and the uniform Superstorm Sandy procedures mandated by the Court." *Id.,* ¶ 108.   Plaintiffs admit that in determining whether a proposed claim is "futile," all allegations of the proposed pleading must be considered to be true, with all inferences drawn in favor of the pleader.   (Obj., Dk. 254, p. 3.)

The counterclaim allegations, Plaintiffs' own judicial admissions in their Amended Complaint and Objection, and the Allstate letter at issue all belie any assertion that Allstate repudiated or disclaimed liability, by "closing" the claim in April 2013 or even with the filing of this action.   Accordingly, the *American Paint* line of cases has no application here.

### 2.    The Counterclaims Are Not Based Only On Post-Litigation Conduct

Plaintiffs also wrongly argue that "misrepresentations made during litigation never void coverage."   (Obj., Dk. 254, pp. 6-8.)   Plaintiffs' implicit assertion that the counterclaims allege only post-litigation misrepresentations as a basis for vitiating the Policy's coverage is simply untrue.   The counterclaims allege pre-litigation conduct sufficient to render all the counterclaims plausible, viable, and non-futile, as the Report properly finds.

The counterclaims allege that Plaintiffs and their public adjuster repeatedly asserted that Plaintiffs had lost everything.   (Countercl., Dk. 174-2, ¶¶ 53-83.)   One such example is the adjuster's May 7, 2013 letter, which Plaintiffs attach to their Objection as Exhibit D.   (Dk. 254-4.)   Plaintiffs also sent a September 13, 2013 letter, two years before the litigation commenced, that misrepresents that the SPP items were lost on account of Sandy and had not been located

since the storm.   (Countercl., Dk. 174-2, ¶¶ 53-83.)   Plaintiffs presented their list of allegedly

stolen UPP items to Allstate in February 2015, seven months before the litigation was filed.

Items matching the description of many of those items were found at CFASS.   *Id.*, ¶¶ 102-105,

187-199.   Plaintiffs concealed from Allstate that they had packed up and moved almost two

hundred boxes of personal property to CFASS for years before they filed this action.   *Id.*, ¶¶

130, 218.   Their delay for 2½ years in making the UPP Claim, and their refusal to sit for

examinations under oath on the UPP claim, were breaches of the Policy's cooperation terms that

also took place before the litigation was filed.   *Id.*, ¶¶ 9, 89, 107.   The counterclaims plainly

are not predicated upon only post-litigation conduct.

### 3.   In Any Event, Post-Litigation Fraud *Can* Void Coverage

Plaintiffs are also wrong in asserting that there is a *per se* rule that post-litigation fraud

cannot void a policy in New York.   (Obj., Dk. 254, pp. 6-8.)   Plaintiffs cite a few New York

cases that state that conduct after an insurance company's repudiation of coverage may not be

grounds for a separate defense to coverage.   Some of the post-repudiation conduct at issue in

some of those cases took place during litigation.   *See, e.g., Ocean-Clear, Inc. v. Continental

Cas. Co.*, 94 A.D.2d 717, 718 (2d Dep't 1983) (defendant disclaimed coverage "prior to the

current lawsuit but after the defendants' expert" had investigated the claim).

None of Plaintiffs' New York cases go so far as to hold that the commencement of

litigation itself, absent a prior repudiation of coverage, ends an insured's obligation to comply

with the policy's terms.   One New York court that has considered this issue held that evidence

of post-litigation fraud could support a defense to coverage.   *See Mauro v. Travelers Ins. Co.*,

107 A.D.2d 1017 (4th Dep't 1985) (rejecting plaintiff's argument that it was reversible error for

court to have allowed evidence of a post-litigation fraud in support of a defense to coverage).

Plaintiffs' unsupportable interpretation of the *American Paint* line of cases, as applied in New York, would put dishonorable insureds in a position to evade the contract terms that protect insurers against fraudulent insurance claims.   Any insured could initiate litigation in the middle of an insurer's investigation of a claim and then misrepresent and conceal facts in the inevitable post-litigation investigation of that claim without vitiating his or her coverage.   That is precisely what Plaintiffs did here.   They refused to submit to a pre-litigation examination under oath, forced Allstate to investigate their fraudulent claim for coverage in the context of litigation discovery, and now contend that their misrepresentations and concealments do not vitiate their coverage.   The law does not, and should not, encourage or permit such conduct.[4]

**B.   The "Innocent Insured" Rule Cannot Apply In This Action**

Plaintiffs also argue for the first time in their Objection that the counterclaims are futile because the misrepresentations of one insured cannot void the policy as to an "innocent insured." (Obj., Dk. 254, p. 11-12.)   Plaintiffs fail to identify who the innocent insured might be, although they are likely contending that Laura Toussie is the "innocent."   Regardless, the counterclaim allegations -- which this Objection argument ignores completely -- state repeatedly that both Plaintiffs failed to cooperate and were involved in the deception that led to the presentation of fraudulent claims.   And Plaintiffs acknowledge that these allegations must be credited as true on the pending motion for leave to amend.   (Obj., Dk. 254, p. 3.)

Both Robert and Laura Toussie brought this litigation, making a fraudulent claim for $1.6 million in insurance coverage.   (Countercl., Dk. 174-2, ¶ 107.)   All of the counterclaim

---

[4]   The failure to submit to examinations under oath alone has been held to be "an absolute defense to a claim under the insurance policy," and sitting for subsequent depositions as part of pre-trial discovery "will not cure the defect."   *Wingates, LLC v. Commonwealth Ins. Co. of Am.*, 21 F. Supp. 3d 206 (E.D.N.Y. 2014) (Spatt, J.).   Allstate is entitled to claim that breach, as well as the other significant breaches of the Misrepresentation and Concealment Clause, in its counterclaims.

allegations are "against Plaintiffs Robert and Laura Toussie," defining both insureds as "Plaintiffs" or the "Toussies."   *Id.* at p. 7.   The misrepresentations made by Plaintiffs' agents (their insurance adjuster and lawyers), including pre-litigation statements that the Toussies had "lost everything," were made on behalf of both Robert and Laura Toussie.   *Id.* at ¶ 118.

There are also specific counterclaim allegations leveled at each insured.   Laura Toussie was involved in washing and checking every piece of property removed from the residence and likely created inventories of that personal property, inventories that Allstate cannot obtain because they were destroyed or withheld.   *Id.* at ¶¶ 31-34.   Laura Toussie signed for the 84 boxes that were removed from CFASS immediately before she and her husband brought this lawsuit against Allstate.   *Id.* at ¶¶ 70-71.   The counterclaims are also replete with allegations about Robert Toussie's improper conduct.   *Id.* at ¶¶ 126-129, 134.   There is no basis for the Court to find the "innocent insured" doctrine to apply to Allstate's counterclaims, as a basis to find these claims futile at this stage or otherwise.

### C.   Attorneys' Fees Are Recoverable For Bad Faith, And The Request For Such Relief Does Not In Any Event Render The Counterclaims Futile

Plaintiffs argue for the first time in their Objection that the Report should have rejected the counterclaims "to the extent Defendant attempts to recover" attorneys' fees because neither the Policy, nor the "American Rule" on litigation expenses, provide for them.   (Obj., Dk. 254, pp. 10-11.)   However, the United States Supreme Court has recognized a federal court's inherent powers include awarding legal fees to the prevailing party "when the losing party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons . . . .'"   *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y,* 421 U.S. 240, 258-59 (1975), quoting *F. D. Rich Co., Inc. v. United States ex rel. Indus. Lumber Co., Inc.,* 417 U.S. 116, 129 (1974).

Allstate has a good faith basis to seek attorneys' fees based on bad faith, and Plaintiffs fail to present any argument to the contrary.   A district court has the inherent power to award legal fees to the prevailing party as a sanction when, for example, a plaintiff brings a claim "without a colorable basis" and the "claim was brought in bad faith."   *See Schlaifer Nance & Co., Inc. v. Estate of Warhol*, 194 F.3d 323, 336 (2d. Cir. 1999).   "[B]ad faith may be found, not only in the actions that led to the lawsuit, but also in the conduct of the litigation."   *Id.,* quoting *Oliveri v. Thompson*, 803 F.2d 1265, 1272 (2d Cir.1986).

Allstate alleges that Plaintiffs have brought non-colorable, fraudulent claims to obtain insurance coverage for personal property by falsely contending that they "lost everything" to theft from their home after surreptitiously packing that property into boxes and shipping it to CFASS.   The record reflects significant bad faith conduct during this action, including Plaintiffs' repeated misrepresentations to the Court and vexatious litigation tactics designed to conceal their fraud and to multiply these proceedings.

The Report recommends sanctions for some of this conduct already.   (Report, Dk. 249, pp. 42-62.)   Even prior to the Report, Magistrate Judge Pollak had noted Plaintiffs' "pattern of seeking to thwart proper discovery requests and to delay this litigation" and a "pattern of improper discovery conduct and frivolous arguments." (February 20, 2018 Order, Dk. 154 at pp. 3-4.)   And after that express written warning from Magistrate Judge Pollak, Plaintiffs objected to discovery on "grounds [that] are frivolous and utterly improper."   (June 8, 2018 Memorandum and Order, Dk. 198 at p. 23.)   Plaintiffs also failed to provide information required by a Court order, and deliberately redacted information that their counsel agreed not to redact, in an effort to hide their fraud.   (Countercl., Dk. 174-2 at ¶¶ 155-163, 165-171.)   Indeed, non-party CFASS was prompted to move for sanctions based on Mr. Toussie's egregious

11

conduct, including threats directed at CFASS during the inspection of Plaintiffs' boxes of personal property.   (*See* Dk. 155, 157.)   Mr. Toussie has even made outlandish demands for courtroom security camera recordings (Dk. 202) and unfounded accusations of bias against the Court.   (Dk. 201.)

This Objection itself is another example of Plaintiffs' improper conduct, using blatant misrepresentations and false legal premises to force Allstate into the expense of briefing the motions at issue a second time.   This is the kind of case in which an award of attorneys' fees to the prevailing party would be warranted.   Respectfully, a finding to the contrary at the pleadings stage on Allstate's counterclaims would not be warranted.   In any event, even if attorneys' fees were not recoverable, that would not render the counterclaims "futile" or constitute grounds to reject the Report's recommendations.

**D.   Plaintiffs' Violation Of The Misrepresentation And Concealment Clause Does Vitiate All Of Their Coverage Under The Policy**

Allstate's third counterclaim seeks to recover all the payments Allstate has made to Plaintiffs on their Sandy-related claims because Plaintiffs violated the Misrepresentation and Concealment Clause.   (Countercl., Dk. 174-2, ¶¶ 233-35.)   Plaintiffs argued to the Magistrate Judge that their coverage should not be vitiated on Sandy-related claims that already have been paid, contending that the Misrepresentation and Concealment Clause is ambiguous and is an exclusion that should be interpreted narrowly in favor of providing coverage.   Allstate responded that the Clause is not ambiguous, nor is it a policy exclusion requiring a narrow interpretation.   Magistrate Judge Pollak, accepting the counterclaim allegations as true, found that Plaintiffs had not demonstrated that the third counterclaim was futile. (Report, Dk. 249, pp. 25-26.)   In their Objection, Plaintiffs rely upon different case law to argue again that the

12

Misrepresentation and Concealment Clause should be construed narrowly and repeat the same ambiguity arguments the Magistrate Judge already rejected.   (Obj., Dk. 254, pp. 7-10.)

The Misrepresentation and Concealment Clause is not ambiguous.   The Policy (Dk. 48-1) is a collection of policy forms and endorsements.   The Policy includes a form that contains a misrepresentation clause and a superseding New York Amendatory Endorsement, in place at the time of Sandy, that broadens the scope of the form language.   The superseded policy form language reads:

> We do not cover any loss or occurrence in which any insured person has concealed or misrepresented any material fact or circumstance.

(Dk. 48-1, Policy, General: Concealment or Fraud, p. 36 of 79.)   The Amendatory Endorsement's substituted, operative language provides:

> Allstate does not cover you or any other person insured under this policy who has concealed or misrepresented any material fact or circumstance, before or after a loss.

(Dk. 48-1, New York Amendatory Endorsement, p. 65 of 79.)   The differences between these two clauses serves to illustrate why Plaintiffs' ambiguity argument fails.

Plaintiffs essentially argue that a fraud defense runs only with the loss or occurrence to which the fraud is connected.   That may be a reasonable interpretation of the superseded form's language, which states that the insurer will not "cover any loss or occurrence" in which the insured misrepresents a material fact.   But that is not the operative Policy language.   The Endorsement's language is plainly broader.   Instead of not covering "any loss" in which fraud occurs, the Policy provides that Allstate does not cover "you" (the insured) when such insured "has concealed or misrepresented any material fact or circumstance, before or after a loss." Under the language of the Endorsement, if there is a misrepresentation, the insured loses coverage under the Policy, period.

This wording is clear and unambiguous on its face and capable of only one reasonable interpretation.    Indeed, Plaintiffs do not offer an alternative interpretation of the language in the clause at issue that could be considered reasonable.    In interpreting a contract under New York law, "words and phrases ... should be given their plain meaning," and the contract "should be construed so as to give full meaning and effect to all of its provisions."    *LaSalle Bank Nat'l Ass'n v. Nomura Asset Capital Corp.*, 424 F.3d 195, 206 (2d Cir. 2005) (internal citations omitted). Reading the clause as Plaintiffs do, to limit the loss of coverage to only a particular loss or occurrence, ignores the broad language that Allstate "does not cover you . . . under this policy."

Plaintiffs' reliance on *Fiore v. State Farm Fire & Casualty Co.,* 135 A.D.2d 602 (2d Dep't 1987) is misplaced.    (Obj., Dk. 254, p. 9-10.)    *Fiore* involved a clause that was worded quite differently than the Endorsement here.    It provided only that "'[t]his entire policy shall be void if any insured has intentionally concealed or misrepresented any material fact or circumstance relating to this insurance.'"    *Id.* at 603.    The *Fiore* court found that because the clause at issue did not include the words "before or after a loss," it was "unlike the standard provision required in fire policies."    The court found the clause ambiguous because it "is not clearly worded to encompass fraudulent claims for loss."    *Id.*

Here, the Policy's Endorsement *does* contain the language "before or after a loss" and thus applies to misrepresentations occurring in the claims process; *Fiore* provides no support for Plaintiffs' ambiguity argument.    *Fiore's* holding also has been questioned because it appears to reward fraud by insureds, a result at odds with even the *Fiore* policy's clear language.    A subsequent New York appellate court declined to follow *Fiore,* holding that an insured "should not be permitted to recover as a result of fraudulent conduct," and expressly "depart[ing] from

the rationale of the Second Department [in] *Fiore. . . .*" *Astoria Quality Drugs, Inc. v. United Pacific Ins. Co.,* 163 A.D.2d 82, 83 (1st Dep't 1990).

In *C. Cubed, Inc. v. General Accident Insurance Co. of America*, No. CV–86–1546 (ILG), 1988 WL 86686 (E.D.N.Y. Aug. 17, 1988), this Court criticized the way in which *Fiore* interpreted the contract language.   A plaintiff relying upon *Fiore* sought to strike affirmative defenses based on the violation of a fraud clause, arguing that even though the clause at issue was worded differently than the *Fiore* clause, it nonetheless also was "not clearly worded to encompass" the fraud alleged.   Judge Glasser rejected the argument and focused instead on a reasonable reading of the language, refusing to sanction an interpretation that would render some of the words in the fraud clause meaningless.   *Id.*   Here, Plaintiffs offer the same type of ambiguity argument.   Accepting it would have the same effect:   it would reward an insured's fraudulent conduct and do violence to actual policy language that unambiguously provides no coverage for insureds who conceal or misrepresent material facts "before or after a loss." Plaintiffs' objection to the Report's finding on the third counterclaim should be rejected.

## III.    The Court Should Adopt The Report's Finding On The Production Of Tax Records

Robert Toussie attempted to bolster his claim that Plaintiffs had "lost everything" by stating, under oath, that "[t]he IRS could verify that [he] lost over $50 million dollars in connection with Superstorm Sandy."   Magistrate Judge Pollak recommends that Plaintiffs be compelled to produce the portions of their tax returns in years 2012 to 2015 that "concern, or relate to, the IRS accepting that the Toussies suffered a $50 million uninsured property loss," or if no such documents exist, to "submit an affidavit indicating that they have not filed any tax returns for the years 2012, 2013, 2014, and 2015 that refer to their losses from Hurricane Sandy." (Report, Dk. 249, p. 41-42.)   These documents are relevant because "Mr. Toussie put his tax materials at issue by claiming that the IRS could vouch for his claim that he had 'lost

everything,'" a central aspect of Allstate's defenses and counterclaims.   *Id.*, p. 40.   The Report also finds that Plaintiffs "fail to demonstrate that there are alternative sources for the information contained in the tax returns."   *Id.,* p. 42.

Plaintiffs argue that the tax returns are unnecessary because Allstate has "already deposed both Plaintiffs regarding these very issues."   (Obj., Dk. 254, p. 13-14.)   This is simply false. Plaintiffs' depositions have not yet been taken.   Plaintiffs obviously know this.   They nonetheless offer this blatant misrepresentation as a reason to justify overturning the Magistrate Judge's ruling on the tax materials.   That Plaintiffs have new counsel cannot excuse this misrepresentation.   The Court has warned Plaintiffs that retaining new counsel is no excuse for taking frivolous positions, but this conduct now continues.   (*See* February 20, 2018 Order allowing inspections at CFASS to continue, Dk. 154 ("[t]he case does not start anew each time there is a change in attorney.").)

Plaintiffs also make a series of vague points about what a tax filer "generally" does and "may" or "must" do based on what the IRS "advises."   (Obj., Dk. 254, p. 13.)   They contend that the tax return schedules at issue are thus likely to reflect little information other than that a $50 million loss had been claimed, which according to Plaintiffs would not be relevant.   The Report found these documents to be relevant; speculation as to what may be found in tax returns generally is hardly a basis upon which the Court could hold that finding to be clearly erroneous.

In any event, Plaintiffs' contention that the information the IRS requires would be too vague to be relevant is completely belied by IRS Publication 584, which Allstate included with its motion to compel.   (Dk. 225-2, Ex. B, p. 2.)   When claiming a casualty or theft loss, a taxpayer must determine each loss separately:

> **Separate computations**. Generally, if a single casualty or theft involves
> more than one item of property, you must figure the loss on each item

> separately. Then combine the losses to determine the total loss from that
> casualty or theft.

*Id.*   Accordingly, the Toussies should have provided the IRS with an itemized list of the

property lost to casualty or theft.

Plaintiffs are also wrong in stating that the tax schedules should not reflect the then-current

value of the property at issue.   (Obj., Dk. 254, p. 13.)   In determining a casualty or theft loss, a

taxpayer must calculate their basis in the property, the fair market value of the property before and

after the loss, and any insurance the taxpayer received or expected to receive.   (*See* Dk. 225-2, Ex.

B, and sample schedules 1-20 thereto.)   These schedules reflect IRS specificity requirements

that make it unlikely that the IRS would allow or accept an unsupported, lump sum claim that the

Toussies lost $50 million worth of property.

The information the Toussies did or did not provide to the IRS in their tax filings is

obviously relevant when one considers the chronology of events at issue.   Plaintiffs did not

submit the $3.9 million Theft claim until February 2015.   That claim dwarfed all of Plaintiffs'

other Sandy-related insurance claims combined.   Allstate suspects that this claim may have been

fabricated sometime between September of 2013 and February of 2015.   The tax schedules at

issue are the sole known instance in which the Toussies may have formally documented their theft

and casualty losses and their expected insurance coverage before or after making their belated UPP

theft claim to Allstate in 2015.   These documents are relevant on that basis alone.   They are also

relevant in determining whether Mr. Toussie misrepresented a material fact about his insurance

claim when he stated in court, under oath, that "[t]he IRS could verify that I lost over $50 million

dollars."   (Transcript, Dk. 31, 172:12-17.)

If none of the property at issue in this case was presented to the IRS as a casualty loss, as

Plaintiffs now suggest to avoid production, perhaps that property was not lost at all.   If the

schedules Plaintiffs provided to the IRS included all of the items on the Theft list and failed to indicate the possibility of any insurance recovery, that would be an admission that Plaintiffs did not believe there was insurance coverage for this loss.[5]   The tax schedule valuation Plaintiffs placed on property similar to the allegedly stolen items could also be relevant to whether Plaintiffs over-valued items on the Theft claim list.    There are multiple grounds upon which to find the tax records at issue relevant, and Plaintiffs' objection fails to address any of them.

## IV.    The Report's Sanctions Award Should Be Adopted; It Is Not Clearly Erroneous

Magistrate Judge Pollak recommends sanctions of $16,030.00 in attorneys' fees and $1,525.85 in costs for Plaintiffs' failure to comply with their discovery obligations and with the Court's prior Orders.    The sanctionable conduct includes forcing Allstate to move to compel the name of Plaintiffs' housekeeper, cancelling the housekeeper's deposition, and prompting unnecessary motion practice in connection with Allstate's requests for admissions and production, as well as with Plaintiffs' attempts to obtain privileged material from Allstate. Twenty pages of the Report are devoted to Magistrate Judge Pollak's careful analysis of this vexatious litigation conduct and the appropriate hourly rates and time to be included in a sanctions award.    The Report reduces the award to an amount substantially below what Allstate paid for the unnecessary legal work prompted by Plaintiffs' improper conduct.    (See Report, Dk. 249, pp. 42 to 62.)

Plaintiffs object to being sanctioned at all for the cancelled deposition of their housekeeper.    (Obj., Dk. 254, p. 14-15.)    They argue that a party should not be sanctioned for

---

[5] As Allstate explained in its motion to compel, Plaintiffs claim that the Theft items at issue total roughly $3.9 million, but given the Policy limits, they only have $1.6 million of insurance coverage.    If their contention is accurate, there is at least $2.3 million of uninsured losses and $1.6 million of insured losses, and both should have been reported to the IRS.    (See Motion to Compel, Dk. 231, p. 2.)

a non-party's failure to appear at a deposition, relying on cases that hold that sanctions are

inappropriate unless the party assumed responsibility for the non-party's appearance, or where

there is a "virtual identity of interest" with the non-party.   *Id.*   Plaintiffs may not have assumed

responsibility for the housekeeper's appearance, but Magistrate Judge Pollak found that they

orchestrated her last-minute non-appearance:

> The Court finds that the Toussies, for whatever reason, did all that they
> could to avoid having the housekeeper deposed.   Initially, they denied the
> existence of a housekeeper who had any role in packing the boxes.   They
> then opposed Allstate's request for her contact information and sought
> reconsideration of this Court's ruling that her name be provided, arguing
> simply that it was "important" that her name not be divulged.   Only under
> threat of sanctions was her identify revealed and then it became clear that
> the Toussies sought to further delay this matter by retaining counsel for Ms.
> Burnette at the last-minute.   Once Allstate was able to reschedule the
> deposition, the housekeeper testified that the last-minute retainer of counsel
> was arranged and paid for by Mr. Toussie. . . .   The Court finds that the
> last minute cancellation of the deposition, although made at the request of
> Ms. Burnette's lawyer, was orchestrated by and the result of steps taken by
> the Toussies to delay the deposition.

(Report, Dk. 249, pp. 48-49.)

These factual findings are based on the detailed evidence the parties presented, evidence

the Report discusses for multiple pages.   *Id.,* pp. 43-49.   Plaintiffs ignore these findings,

making no argument as to why they are clearly erroneous, nor could they.   This is obviously

abusive and dilatory litigation conduct and there is no basis to reject the Report's findings.

Plaintiffs also object to the amount of sanctions awarded for the time Allstate's lawyers

spent addressing the sanctionable conduct.   Magistrate Judge Pollak made detailed factual

findings on the amount of sanctions to be awarded, significantly reducing the hourly rates and

the number of hours to include in the recommended sanctions award, a substantial reduction

from what Allstate actually paid for the legal work at issue.   (Report, Dk. 249, pp. 52-61.)

Plaintiffs do not discuss the basis for these findings at all, much less explain why they are clearly

erroneous, other than offering the sophistic generalization that one of the motions was "for relatively common issues."   (Obj., Dk. 254, p. 16.)   Plaintiffs fail to offer an argument that should prompt the Court to lower the award further.

## <u>CONCLUSION</u>

For the reasons set forth herein, Plaintiffs' Objection should be denied and the Report should be accepted and adopted in its entirety.

Dated: March 22, 2019
      New York, NY

DENTONS US LLP

By:     /s/ Gary Meyerhoff
      Gary Meyerhoff
      Brendan E. Zahner
      1221 Avenue of the Americas
      New York, New York 10020-1089
      Tel:   (212) 768-6700
      Fax:   (212) 768-6800
      gary.meyerhoff@dentons.com
      brendan.zahner@dentons.com

      *Counsel for Defendant*