UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| Robert Toussie, *et al.*, | 1:15-CV-5235 |
| *Plaintiffs*, | |
| – against – | **Not for Publication** |
| Allstate Insurance Co., | |
| *Defendant*. | **Opinion & Order** |

ROSS, United States District Judge:

The plaintiffs in this long-running case have filed numerous objections to a report and recommendation, filed February 6, 2019, by the Honorable Cheryl L. Pollak, United States Magistrate Judge. Because I find that Judge Pollak's report and recommendation withstands all the plaintiffs' objections under the applicable standards of review, I adopt her recommended disposition of the four motions at issue.

## BACKGROUND

*The Factual and Procedural Backdrop*

The plaintiffs, Robert and Laura Toussie, own a home that sits along the water in the Manhattan Beach section of Brooklyn. *See* R. & R. 2, ECF No. 249.[1] After Hurricane Sandy struck New York in October 2012, the Toussies submitted several claims to the defendant, Allstate Insurance Co., under their homeowners' insurance policy, for reimbursement for lost and damaged property, including claims for many items of personal property specifically scheduled in the insurance policy. *See id.* The Toussies claimed that everything in their house—

---

[1] Although objecting to many of the report's recommendations, the plaintiffs do not contest Judge Pollak's account of the facts of this case. *See* Obj. 1, ECF No. 254.

1

save "a piano and some chandeliers"—was either damaged in the storm itself or stolen by looters after the storm. *Id.* at 3.

In February 2015, only shortly before the April 2015 mediation of their scheduled-personal-property claims, the Toussies informed Allstate that they had also suffered additional losses—of unscheduled personal property—in the amount of $3,983,221, as a result of theft following the hurricane. *Id.* at 2–3. Thus, although Allstate reimbursed the Toussies $365,450 for their scheduled-personal-property losses, it sought to investigate their unscheduled-personal-property claim by examining the Toussies under oath. *See id.* at 2. The Toussies declined to sit for the examinations and instead, in September 2015, filed this lawsuit. *See id.* at 2–3.

Toward the outset of the discovery process, on May 29, 2016, the parties met before Judge Pollak at a lengthy conference that included sworn testimony by plaintiff Robert Toussie. *See* Tr. 6:13–23, ECF No. 31. During that conference, Mr. Toussie stated under oath that "[t]he IRS could verify that [he] lost over $50 million dollars [in property]." *Id.* at 172:16–17.

In the months following that conference, Allstate learned that, "contrary to plaintiffs' representations that all had been lost or stolen, boxes of items were packed up and moved, at the Toussies' direction, from the Toussies' home to a secure storage facility . . . shortly after the storm," long before the Toussies filed this lawsuit. R. & R. 4.

On September 26, 2016, Judge Pollak ordered the plaintiffs to disclose the names of the individuals involved in the packing of the boxes, but the plaintiffs failed to comply. *See id.* at 4–5. Accordingly, in June 2017, the defendant was "forced to file a motion to compel" to obtain the name and contact information of the Toussies' housekeeper, whom Allstate understood to have helped pack the boxes. *Id.* at 6 n.15, 7 n.18. The housekeeper was finally

2

identified by the plaintiffs on October 23, 2017 (*id.* at 45), and the defendant served her with a subpoena to testify at a deposition scheduled to be held on November 16, 2017 (*see* Subpoena, ECF No. 123-2). "[A]t the eleventh hour," however, a lawyer representing the housekeeper canceled the deposition. R. & R. 7 n.18. The housekeeper would indicate at her rescheduled deposition, in December 2017, that "the last-minute delay of the deposition and retainer of counsel for her was instigated by Mr. Toussie, who paid for her lawyer." *Id.* at 45–46.

Other aspects of the discovery process were similarly contentious. After some of the boxes from the Toussies' home were located at Christie's Fine Arts Storage Services, the defendant sought to serve a subpoena on Christie's to discover what the boxes contained. *Id.* at 5–6. And on October 20, 2017, due to "significant concerns" of evidence spoliation, Judge Pollak entered a preservation order, enjoining the plaintiffs "from removing any boxes or property from the storage units located at Christie's." *Toussie v. Allstate Ins. Co.*, No. 15-CV-5235, 2017 WL 4773374, at *4–5 (E.D.N.Y. Oct. 20, 2017). Judge Pollak's order was set to expire on November 6, 2017, unless the defendant's inspection of the storage units was completed sooner. *See id.* at *5.

In the end, Judge Pollak was required to extend her preservation order repeatedly due to significant delays in the inspection process. *See* R. & R. 10–12. Although the parties blamed each other for the delays (*see id.* at 9–10), Judge Pollak would ultimately conclude that "most, if not all, of the delay with respect to the inspection . . . resulted from the conduct of the plaintiffs and their counsel" (*Toussie v. Allstate Ins. Co.*, No. 15-CV-5235, 2018 WL 993626, at *3 (E.D.N.Y. Feb. 20, 2018)). The inspection was finally completed as of March 16, 2018. R. & R. 13.

On May 4, 2018, Allstate filed another discovery motion, seeking both to have several requests for admission deemed admitted and to compel the production of video recordings shot by the Toussies' videographer during inspections of the storage unit. *See Toussie v. Allstate Ins. Co.*, No. 15-CV-5235, 2018 WL 2766140, at *10–11 (E.D.N.Y. June 8, 2018), *aff'd*, Order, Aug. 15, 2018, ECF No. 229. In response, the Toussies cross-moved for production of the "photographs and notes that [Allstate's] counsel and paralegals took during the inspection." *Id.* at *11 (quoting Letter Motion 3, ECF No. 187). In ruling on the motions, on June 8, 2018, Judge Pollak: (1) deemed twelve of the fifteen requests for admission admitted, while describing the Toussies' objections as "frivolous and utterly improper"; (2) ordered the Toussies "to provide copies of the videos taken during the inspection"; and (3) found that the notes taken by Allstate's counsel were "clearly work product" to which the Toussies had "made absolutely no showing" of entitlement. *Id.* at *11–12.[2]

*The Four Motions at Issue*

On April 17, 2018, before that last discovery motion, Allstate moved to amend its answer, seeking to add counterclaims alleging that the Toussies had engaged in "many material misrepresentations," including misrepresenting their entitlement to reimbursement for items of personal property that were later found in their storage unit at Christie's. Proposed Am. Answer 12–16, 37, ECF No. 174-2. As a result, Allstate seeks a judgment not only obviating any further payments to the Toussies but also requiring the Toussies to disgorge the reimbursement payments that they have already received. *See id.* at 39.

On June 15, 2018, the Toussies moved to amend their complaint in order to "assert claims against Allstate for conversion and tortious interference with prospective business relations." Br. Supp. Pls.' Mot. to Amend 2, ECF No. 204-1. The theory underlying the

---

[2] The defendant "agreed to produce the photographs." *Toussie*, 2018 WL 2766140, at *11.

amendment was that Allstate was liable in tort for "causing [Judge Pollak]—through deceitful means—to enter and repeatedly extend the preservation order," thereby interfering with the Toussies' abilities "to sell or otherwise dispose of their property." Proposed Am. Compl. ¶¶ 158, 160, 165, ECF No. 204-3.

On August 2, 2018, the defendant moved to compel the plaintiffs either to produce "[a]ll Documents and communications concerning the Internal Revenue Service acknowledging or accepting that [the Toussies] suffered approximately $50 million of uninsured property losses" (Resp. Doc. Req. 7, ECF No. 225-3) or "to respond to Allstate's interrogatories on the same subject" (Mot. to Compel 1, ECF No. 225).

Finally, on October 24, 2018, the defendant moved to recover attorney's fees and costs from the plaintiffs in connection with (1) its motion to compel the name of the Toussies' housekeeper, (2) the housekeeper's canceled deposition, (3) Allstate's motion to have requests for admission deemed admitted and to compel production of the plaintiffs' video recordings, and (4) Allstate's resisting the Toussies' motion to compel production of Allstate's counsel's work product. Sanctions Mot. 3–5, ECF No. 232.

On February 6, 2019, Judge Pollak entered her report and recommendation, recommending (1) that I grant Allstate's motion to amend its answer, (2) that I deny the Toussies' motion to amend their complaint, (3) that I grant Allstate's discovery motion regarding the $50 million loss reported to the IRS, and (4) that I grant Allstate's motion for sanctions. R. & R. 1. The Toussies filed their objections to the report and recommendation on March 8, 2019 (Obj., ECF No. 254), and Allstate filed a response to the objections on March 22, 2019 (Resp. to Obj., ECF No. 256).

5

## STANDARD OF REVIEW

"The standard of review for a magistrate judge's order depends on whether the order is dispositive. When reviewing a dispositive order, 'a judge of the court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made.'" *DiPilato v. 7-Eleven, Inc.*, 662 F. Supp. 2d 333, 340 (S.D.N.Y. 2009) (citation omitted) (quoting 28 U.S.C. § 636(b)(1)). "The court, however, is not required to review the factual findings or legal conclusions of the magistrate judge as to which no proper objections are interposed." *Gusler v. City of Long Beach*, 823 F. Supp. 2d 98, 109 (E.D.N.Y. 2011), *appeal dismissed*, 700 F.3d 646 (2d Cir. 2012). Rather, with regard to dispositive portions of the report and recommendation "to which no timely objection has been made, the district judge need only be satisfied that there is no clear error on the face of the record." *Id.*

By contrast, "[w]hen reviewing a [magistrate judge's] order regarding non-dispositive issues, a district court judge may only reconsider the order 'where it has been shown that the magistrate's order is clearly erroneous or contrary to law.'" *DiPilato*, 662 F. Supp. 2d at 340 (quoting § 636(b)(1)(A)). "The Court is not required to review any [nondispositive] portion of a magistrate judge's report that is not the subject of an objection." *Cardell Fin. Corp. v. Suchodolski Assocs.*, 896 F. Supp. 2d 320, 324 (S.D.N.Y. 2012).

At least two of the motions at issue here—Allstate's motion to compel discovery and its motion for sanctions—are properly considered nondispositive. I thus review the Toussies' objections to Judge Pollak's disposition of those motions "under the 'clearly erroneous or contrary to law' standard." *Thomas E. Hoar, Inc. v. Sara Lee Corp.*, 900 F.2d 522, 525 (2d Cir. 1990).

The motions for leave to amend present a trickier question. "[T]he proper classification as dispositive or non-dispositive of a motion for leave to file an amended complaint [or answer] is not settled within the Second Circuit." *Charlot v. Ecolab, Inc.*, 97 F. Supp. 3d 40, 46 n.5 (E.D.N.Y. 2015); *but see Fielding v. Tollaksen*, 510 F.3d 175, 178 (2d Cir. 2007) (mentioning "a motion to amend the complaint" as example of "nondispositive motions"). Rather than wade into this issue (*see generally Rivers v. N.Y.C. Hous. Auth.*, No. 11-CV-5065 (KAM), 2014 WL 12829494, at *3–4 (E.D.N.Y. Nov. 17, 2014)), because I would affirm Judge Pollak's recommendations on the motions to amend under either standard, I proceed under "the more stringent, de novo standard of review" applicable to dispositive motions (*Wilson v. City of New York*, No. 06-CV-0229 (ARR), 2008 WL 1909212, at *4 (E.D.N.Y. Apr. 30, 2008)).

## DISCUSSION

### I. Allstate's Motion to Amend

The insurance policy at issue in this case provides:

> Allstate has the right to cancel . . . your policy . . . if you intentionally conceal any material fact or circumstance before or after a loss. Furthermore, Allstate does not cover you or any other person insured under this policy who has concealed or misrepresented any material fact or circumstance, before or after a loss.

Policy 65 (emphasis omitted), ECF No. 48-1. This provision is central to Allstate's proposed counterclaims.

In its proposed answer, the defendant alleges that the Toussies made "many material misrepresentations and omissions" in their communications with Allstate and that, consequently, "all coverage under the Policy is vitiated and the Toussies must disgorge all amounts paid under the Policy in connection with Superstorm Sandy." Proposed Am. Answer 36–37. The defendant's proposed counterclaims request not only disgorgement of previous payments but also attorney's fees and costs. *See id.* at 39.

7

In her report and recommendation, Judge Pollak recommended granting the defendant's motion, as she found that the plaintiffs had "not established that any of defendant's counterclaims, accepted as true for the purpose of this motion, fail to state a claim upon which relief could be granted or are futile and could not survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6)." R. & R. 25–27.

In their objections, the plaintiffs now argue that the proposed counterclaims are futile because the alleged misrepresentations took place *after* Allstate had repudiated the policy and thus are not actionable (*see* Obj. 8), because "nothing within the Policy allows for the entire Policy to be vitiated or for reimbursement of any claims paid prior to the alleged misrepresentation" (*id.* at 8–9), because attorney's fees "are not recoverable in this action" (*id.* at 10), and because "misrepresentations by one insured [cannot] void the policy as to [an]other" (*id.* at 11).[3] For the reasons that follow, each of these arguments fails.

A.  **Timing of the Alleged Misrepresentations**

The Toussies observe that, under New York law, "[o]nce an insurer repudiates liability, . . . the assured is excused from any of its obligations under the policy and therefore it is generally accepted that fraud arising after the commencement of an action on a policy does not void the policy" (*Ocean-Clear, Inc. v. Cont'l Cas. Co.*, 462 N.Y.S.2d 251, 252 (App. Div. 1983) (citation omitted) (citing *Lentini Bros. Moving & Storage Co. v. N.Y. Prop. Ins. Underwriting Ass'n*, 422 N.E.2d 819 (N.Y. 1981), *Sherri v. Nat'l Surety Co. of N.Y.*, 153 N.E. 70 (N.Y. 1926), and *Beckley v. Otsego Cty. Farmers Coop. Fire Ins. Co.*, 159 N.Y.S.2d 270 (App. Div. 1957))). *See* Obj.

---

[3] In their opposition to the defendant's motion to amend before Judge Pollak, the plaintiffs raised only one of these arguments. *See* Br. Opp'n Def.'s Mot. to Amend 4–6, ECF No. 189 (arguing that alleged misrepresentations cannot vitiate entire policy). Nevertheless, it is "within the discretion of the district court to consider arguments not presented . . . to the magistrate judge in connection with a report and recommendation." *Levy v. Young Adult Inst., Inc.*, 103 F. Supp. 3d 426, 433 (S.D.N.Y. 2015); *see also* Resp. to Obj. 4 (requesting that I address merits of plaintiffs' objections).

8

7. That is, once "the insurer denies liability and compels the insured to bring suit, the rights of the parties are fixed as of that time." *Ocean-Clear*, 462 N.Y.S.2d at 253 (quoting *Am. Paint Serv., Inc. v. Home Ins. Co. of N.Y.*, 246 F.2d 91, 94 (3d Cir. 1957)).

Although Allstate's proposed counterclaims here include allegations of misrepresentations made by the plaintiffs during the course of this litigation (*see* Proposed Am. Answer 21–34), they also allege numerous material misrepresentations and concealments that predate the filing of the lawsuit: First, Allstate alleges that the Toussies' public adjuster, on the Toussies' behalf, "told Allstate several times, including in writing [on May 7, 2013], that the Toussies had lost everything." *Id.* at 9. In truth, Allstate alleges, "a large amount of property was saved from the [Toussies'] Residence, including property . . . for which Allstate subsequently paid the Toussies, and property . . . that the Toussies are presently seeking payment for." *Id.* Allstate also alleges that, on September 13, 2013, two years before suit was brought, the Toussies, through counsel, provided Allstate with a false "list of fine arts pieces that were lost on account of Superstorm Sandy." *Id.* at 12–13. And finally, Allstate alleges that, on February 6, 2015, the Toussies' public adjuster misrepresented the replacement cost of various items that the Toussies claim were stolen by looters. *Id.* at 17–19. These acts of concealment and misrepresentation, alleged in the counterclaims, are plainly not based on post-litigation conduct. The *Ocean-Clear* line of cases on which the plaintiffs rely is thus inapposite and provides no basis on which to find that Allstate's proposed counterclaims are futile.

The Toussies also contend that even those alleged misrepresentations that predate the lawsuit are irrelevant because Allstate repudiated the insurance contract as early as April 26, 2013. *See* Obj. 4–5, 8. In advancing this line of argument, the Toussies rely on a fax from their own public adjuster to an Allstate employee, which quotes an April 26, 2013 letter from

9

Allstate. Tutwiler Fax, ECF No. 174-5. The fax quotes the letter as stating: "***This letter will serve as notification that this claim is being closed due to 'lack of interest.'***" *Id.* at 2. The plaintiffs argue that "the letter 'closing' the claim served as a repudiation of the Defendant's liability" and thus that any misrepresentations that followed it are immaterial. Obj. 8.

Preliminarily, I note that I cannot rely on the fax in assessing the sufficiency of the proposed counterclaims. Although "the factual allegations set forth in the proposed amended pleading are assumed to be true" (*Bryant v. Silverman*, 284 F. Supp. 3d 458, 468 (S.D.N.Y. 2018)), the same cannot be said of factual representations made by the opposing party set forth in an exhibit to that pleading.[4] Nevertheless, a review of the original letter from Allstate (Zahner Decl. Ex. 1, ECF No. 256-1) reveals that the plaintiffs have misstated its meaning. The letter, whose contents are truncated in the fax, goes on to state that the Toussies' "claim may be reopened at a later date once the requested information has been provided to the adjuster." *Id.* Accordingly, I have no basis to credit the plaintiffs' assertion that Allstate repudiated the policy in April 2013, and accordingly the plaintiffs' argument fails.

**B.**   **Vitiation of the Policy and Disgorgement**

In its first and third counterclaims, Allstate seeks disgorgement of payments already made to the Toussies. *See* Proposed Am. Answer 35, 37. This requested relief is premised on the same policy language set forth above, which states that "Allstate does not cover . . . any . . . person insured under this policy who has concealed or misrepresented any material fact or circumstance, before or after a loss" (Policy 65).

---

[4] The fax sent by the Toussies' public adjuster was attached to Allstate's proposed answer as an example of the Toussies' misrepresentations. *See* Proposed Am. Answer 9. Allstate is in no way alleging that all the statements made in the fax are true.

The Toussies argue that, even if they did make material misrepresentations with respect to the loss of personal property, that would not vitiate their entire insurance policy and would not require disgorgement of payments that Allstate already made, particularly not payments for damage to the Toussies' real property. *See* Obj. 9. In support of their argument against vitiation, the Toussies point to *Fiore v. State Farm Fire & Casualty Co.*, 522 N.Y.S.2d 180 (App. Div. 1987), and to *North River Insurance Co. v. Good Morning Farms, Inc.*, 482 N.Y.S.2d 163 (App. Div. 1984). *See* Obj. 9.

Both *Fiore* and *North River* dealt with provisions that declared an insurance policy "void if any insured has intentionally concealed or misrepresented any material fact or circumstance relating to this insurance." *Fiore*, 522 N.Y.S.2d at 181; *N. River*, 482 N.Y.S.2d at 164. In each case, the court ruled that the provision did "not clearly . . . encompass fraudulent claims for loss made under the policy after the policy bec[ame] effective" inasmuch as it did "not include the words 'whether before or after loss.'" *Fiore*, 522 N.Y.S.2d at 181; *accord N. River*, 482 N.Y.S.2d at 164. Finding the clauses "ambiguous," the courts thus interpreted them "in favor of the insured" "to refer only to fraud in the inducement of the insurance contract." *N. River*, 482 N.Y.S.2d at 164; *accord Fiore*, 522 N.Y.S.2d at 181. *But see Astoria Quality Drugs, Inc. v. United Pac. Ins. Co. of N.Y.*, 557 N.Y.S.2d 339, 340 (App. Div. 1990) (rejecting this analysis).

In this case, however, the policy explicitly provides that Allstate "has the right to cancel . . . [the] policy . . . if [the policyholders] intentionally conceal any material fact or circumstance *before or after a loss*." Policy 65 (emphasis added). As such, the policy in this case "is clearly worded so as to encompass fraudulent claims for loss made under the policy *after* it becomes effective as well as misrepresentations made in connection with the policy itself or its initial issuance." *Nipkow & Kobelt, Inc., Parliament Textile Div. v. N. River Ins. Co.*, 673 F. Supp. 1185,

11

1187 n.5 (S.D.N.Y. 1987) (quoting *N. River*, 482 N.Y.S.2d at 164). The plaintiffs' argument is meritless.[5]

Next, the Toussies argue that even if they engaged in "some sort of fraud or concealment" with respect to claims for personal property, "there is no authority whatsoever for the Defendant to recover payment made to the Plaintiffs under a separate and distinct claim . . . for damage to the real property." Obj. 9. But this argument ignores that the Toussies' personal property and real property were insured under the same policy (*see, e.g.*, Policy 6), and the Toussies point to nothing in the policy that suggests that misrepresentations regarding personal property would not void coverage with respect to real property, or vice versa. In fact, the policy's "Concealment or Fraud" provision is quite broad and, making no distinction between types of claims, appears to contemplate vitiation of the entire policy. *See id.* at 65.

Finally, the Toussies argue that even if they made material misrepresentations, nothing "in the Policy itself nor . . . under New York law" would require them to disgorge payments that they have already received from Allstate. Obj. 9.[6] Rather, they say, "in the event of fraud or concealment, . . . [t]he policy is silent as to how claims previously paid under the policy will be treated." *Id.* The Toussies, however, must do more than point to an absence of conclusive evidence. For at this stage, as on a motion to dismiss, the burden does not fall on the defendant to prove that it is entitled to disgorgement of funds. Rather, the burden falls on the plaintiffs to demonstrate that Allstate's request for disgorgement is futile. Although it is possible that the Toussies' "interpretation of the policy language will vindicate them . . . during a later stage of the proceedings" (R. & R. 25), they have not met their burden here.

---

[5] Because *Fiore* and *North River* are inapposite, I need not speculate whether the New York Court of Appeals would reject the holding of those decisions in favor of the contrary holding of *Astoria Quality Drugs*. *Cf.* Resp. to Obj. 14–15 (observing that "*Fiore's* holding . . . has been questioned").

[6] The plaintiffs cite no authority for the proposition that disgorgement is not available under New York law.

**C.     Availability of Attorney's Fees**

In its proposed counterclaims, Allstate seeks not just disgorgement of payments already made but also attorney's fees and costs. Proposed Am. Answer 39. The Toussies argue that the request for attorney's fees is improper because "'it has now long been the universal rule in this country not to allow a litigant to recover damages for the amounts expended in the successful prosecution or defense of its rights' [except] when 'an award is authorized by agreement between the parties or by statute or court rule.'" Obj. 10 (quoting *Congel v. Malfitano*, 101 N.E.3d 341, 352 (N.Y. 2018)).

"Nevertheless, even under the American Rule, courts retain the 'equitable power to make awards in addition to regular statutory costs, including a reasonable attorneys' fee,' in certain circumstances, such as if a party has acted in bad faith." *OneWest Bank N.A. v. Lehman Bros. Holding Inc.*, No. 14-CV-8916 (JMF), 2015 WL 1808947, at *3 (S.D.N.Y. Apr. 20, 2015) (quoting *Brookhaven Sci. Assocs. v. Donaldson*, No. 04-CV-4013 (LAP), 2007 WL 2319141, at *4 n.18 (S.D.N.Y. Aug. 9, 2007)); *see Chambers v. NASCO, Inc.*, 501 U.S. 32, 45–46 (1991). And "courts in this circuit have denied a defendant's motion to strike or to dismiss claims for attorney's fees even though the likelihood that plaintiff will be able to recover attorney's fees is small, because dismissal of such claims at the pleading stage would be premature"—even in cases where the plaintiff had not yet alleged any bad faith. *OneWest Bank*, 2015 WL 1808947, at *3 (quoting *SRSNE Site Grp. v. Advance Coatings Co.*, No. 12-CV-0443 (VLB), 2014 WL 671317, at *2 (D. Conn. Feb. 21, 2014)). Here, where the court is *already* assessing attorney's fees against the plaintiffs as a sanction for various discovery abuses (*see infra* Part IV), I cannot but agree with Judge Pollak that the defendant's claim for attorney's fees is not futile.

**D.    Innocent Insured**

The Toussies' final argument with respect to Allstate's motion to amend is that even if one of the insureds made material misrepresentations, the policy should not be vitiated as to the other, "innocent insured." Obj. 11.

It is true that the policy provision at issue excludes from coverage "any . . . person insured under this policy who has concealed or misrepresented any material fact or circumstance" (Policy 65) and thus "only serves to vitiate the coverage of a named insured who has actually engaged in misrepresentation" (*Azzato v. Allstate Ins. Co.*, 951 N.Y.S.2d 726, 732 (App. Div. 2012)). As the defendant notes (*see* Resp. to Obj. 9), however, the plaintiffs do not indicate which of the insureds they believe to be the innocent one in this case. Allstate's proposed counterclaims allege that misrepresentations were made by and on behalf of *both* of the Toussies. *See* Proposed Am. Answer 9 (alleging misrepresentation made "on behalf of Robert and Laura Toussie"); *id.* at 12 (alleging misrepresentation made "on behalf of the Toussies"); *id.* at 19 (alleging "material misrepresentations by Robert and Laura Toussie"). Assuming the truth of Allstate's counterclaims, as I must on this motion, there is no innocent insured in this case. Whether the facts will bear out these allegations is yet to be determined, but I cannot say that they are futile.

Finding no merit in the Toussies' objections to Judge Pollak's recommendation, I grant Allstate's motion for leave to amend its answer.

## II.    The Plaintiffs' Motion to Amend

The Toussies do not object to Judge Pollak's recommendation that I deny their motion for leave to amend their complaint. As a result, I have reviewed this portion of the report and recommendation for clear error on the face of the record. *See* Fed. R. Civ. P. 72 advisory committee's note to subdivision (b); *Gusler*, 823 F. Supp. 2d at 109. Finding no clear error, I

14

adopt this portion of the report and recommendation per § 636(b)(1) and deny the plaintiffs' motion.

### III. The Motion to Compel

In granting Allstate's motion to compel, Judge Pollak ordered the Toussies to respond to the defendant's request for "[a]ll Documents and communications concerning the Internal Revenue Service acknowledging or accepting that [the Toussies] suffered approximately $50 million of uninsured property losses" (Resp. Doc. Req. 7). *See* R. & R. 42. If no such documents exist, Judge Pollak continued, the Toussies must "submit an affidavit indicating that they have not filed any tax returns for the years 2012, 2013, 2014, and 2015 that refer to their losses from Hurricane Sandy." *Id.*[7]

Allstate's document request is designed to ascertain "[t]he identity of the property that was lost by the Toussies, the value of such property and the insurance coverage for such property," all of which "the Toussies made representations to the IRS regarding." Mot. to Compel 2. In objecting to Judge Pollak's granting of the motion, the Toussies observe that the actual tax deduction available for casualty and theft losses is not equivalent to the total property loss but instead is limited to the lesser of the loss in value or the cost basis of the property, less $100 per instance of casualty or theft, less ten percent of the taxpayers' adjusted gross income. *See* Obj. 13; I.R.S. Form 4684 (2012). As a result, the Toussies argue, "[t]he value of any loss . . . would bear little resemblance to the value of the items under the Policy." Obj. 13.

But Allstate has not asked the Toussies to reveal the *amount* of the tax deduction they ultimately received; rather, it has asked for the *documents* underlying the claimed tax deduction. *See* Resp. Doc. Req. 7. A review of the relevant tax forms confirms that the Toussies would

---

[7] Judge Pollak also ordered the Toussies to respond to certain interrogatories relating to the losses that the Toussies reported to the IRS. *See* R. & R. 42. The plaintiffs did not object to this portion of her report and recommendation.

15

have had to identify the type, acquisition date, cost, and fair market value of each piece of personal property for which they were claiming a casualty or theft loss. *See, e.g.*, I.R.S. Form 4684. The Toussies' suggestion that their tax returns would not contain relevant information thus lacks any merit.

The plaintiffs also object that Judge Pollak "recommended that the Plaintiffs provide tax returns for 2012, 2013, 2014 and 2015." Obj. 14. Instead, they argue, "at most the Plaintiffs should be directed to turn over only their 2012 tax returns" because "a loss such as this can only be claimed in the year in which the loss occurred." *Id.*

The plaintiffs misstate Judge Pollak's order. Her report and recommendation ordered the Toussies to "produce documents responsive to Allstate's document request number 6" (R. & R. 42), and that request seeks only "[d]ocuments and communications concerning the Internal Revenue Service acknowledging or accepting" the Toussies' claimed property losses (Resp. Doc. Req. 7). Additionally, Judge Pollak ordered that if the Toussies possess no responsive documents, then they must "submit an affidavit indicating that they have not filed any tax returns for the years 2012, 2013, 2014, and 2015 *that refer to their losses from Hurricane Sandy*." R. & R. 42 (emphasis added). Plainly, if the Toussies' 2013, 2014, and 2015 tax returns do not include any claims of Sandy-related property loss, then the Toussies need not produce those returns.[8]

Finding no clear error in Judge Pollak's recommendation, I grant the defendant's motion to compel, on the same terms as Judge Pollak recommended.

---

[8] Finally, the plaintiffs assert that there is no compelling need for their tax returns insofar as "the Defendant has already deposed both Plaintiffs regarding these very issues" and thus the information contained in the tax returns "was readily obtainable from both Plaintiffs." Obj. 13–14. The defendant responds that "[t]his is simply false. Plaintiffs' depositions have not yet been taken." Resp. to Obj. 16. I have no independent knowledge of whether the Toussies have been deposed in this case or not, and neither side has presented any evidence one way or the other. The burden, however, is on the plaintiffs to demonstrate that Judge Pollak's order was clearly erroneous. They have not met that burden.

## IV. The Motion for Sanctions

In her report and recommendation, Judge Pollak recommended awarding Allstate (1) all of the $1260.00 in fees it sought "in connection with the motion to compel the housekeeper's name" (R. & R. 58), (2) $6125.00 of the $7875.00 in fees and all of the $1525.85 in costs it sought "in connection with the housekeeper's deposition" (*id.* at 59–60), and (3) $8645.00 of the $12,550.00 in fees it sought "in connection with the motion to compel responses to its Requests for Admissions, the production of the videotapes, and the cross-motion to compel production of the attorney's notes" (*id.* at 60–61). The Toussies object to the second and third elements of Judge Pollak's sanctions recommendation. *See* Obj. 14–17.

### A. The Canceled Deposition

#### 1. *Appropriateness of Sanctions*

Rule 37 of the Federal Rules of Civil Procedure provides that, on a motion, "the court must require" a party who fails to appear for their deposition "to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(d)(3). Courts have also held that "Rule 37(d) sanctions may be imposed where a party is found responsible for the appearance of a witness for a deposition" and that witness fails to appear. *PrecisionFlow Techs., Inc. v. CVD Equip. Corp.*, 198 F.R.D. 33, 37 (N.D.N.Y. 2000), *aff'd*, 140 F. Supp. 2d 195 (N.D.N.Y. 2001). Accordingly, "[c]ourts have not hesitated to impose sanctions on a party when a person who is . . . under the party's 'control' fails to appear for deposition." *In re Bear Stearns Cos. Sec., Derivative, & ERISA Litig.*, 308 F.R.D. 113, 120 (S.D.N.Y. 2015).

Here, the Toussies object that "there was no finding that the Plaintiffs had control over the non-party witness nor had they assumed any responsibility for her appearance at a deposition." Obj. 15. On the contrary, Judge Pollak explicitly found "that the last-minute

cancellation of the deposition, although made at the request of [the housekeeper's] lawyer, was orchestrated by and the result of steps taken by the Toussies to delay the deposition." R. & R. 49. Consequently, it was not clearly erroneous for Judge Pollak to determine that sanctions against the plaintiffs were appropriate.

### 2. *Amount Awarded*

As noted above, Judge Pollak recommended an award of $6125.00 in fees in connection with the cancellation of the housekeeper's deposition. This amount corresponds to 10.5 hours of preparation time, as well as 7 hours of travel, by Allstate's counsel. *See* R. & R. 59. The Toussies argue that the amount of preparation time was excessive, and cite *Bey v. City of New York*, No. 99-CV-3873 (LMM) (RLE), 2007 WL 1771557 (S.D.N.Y. June 18, 2007), in which the court found that, in that case, "a reasonable number of billable hours is five . . . per deponent" (*id.* at *4). *See* Obj. 15–16.

What constitutes a reasonable amount of time to prepare for a deposition will vary from case to case and from deposition to deposition. *See, e.g.*, *Bey*, 2007 WL 1771557, at *4 ("[T]he time spent preparing for a deposition should reflect the amount of relevant information possessed by the deponent."). For example, in *Pall Corp. v. 3M Purification Inc.*, No. 97-CV-7599 (RRM) (ETB), 2012 WL 1979297 (E.D.N.Y. June 1, 2012), the court stated that "preparing for more than thirty hours per deposition is not inherently unreasonable" and reduced the award in that case to "ten hours of preparation time per deposition" only because it "was not the first time that any of the [witnesses] were deposed." *Id.* at *6–7. Here, particularly in light of Judge Pollak's familiarity with this case, I see no basis to overrule her recommendation that the defendant be allowed to recover for 10.5 hours of deposition-preparation time.

18

**B.     The Cross-Motions to Compel**

Similarly, the Toussies argue that Judge Pollak recommended allowing too many hours for Allstate's counsel's work in connection with the parties' cross-motions to compel. *See* Obj. 16–17. Although the defendant requested compensation for 49.8 hours of work, Judge Pollak struck that down to 32.2 hours, recommending a fee award of $8645.00. *See* R. & R. 60–61. Nevertheless, the Toussies object that "the motion was for relatively common issues and could not possibly have required 25 hours['] worth of work, let alone the 49 hours the Defendant's counsel sought reimbursement for." Obj. 16.

Again, however, I am unable to conclude that Judge Pollak's recommendation was clearly erroneous. *See, e.g.*, *Bravia Capital Partners, Inc. v. Fike*, 296 F.R.D. 136, 145–46 (S.D.N.Y. 2013) (awarding $12,526.50 in connection with motion to compel, representing 40% reduction of 57.9-hour fee request). Especially in view of her familiarity with the underlying motions, I have no basis to find that her reduction of the defendant's attorney's fees was insufficient.

Finding no clear error in Judge Pollak's recommendation, I grant the defendant's motion for sanctions, in the same amounts that Judge Pollak recommended.

## CONCLUSION

For the foregoing reasons, Judge Pollak's recommendations are adopted in full:

a. Allstate's motion for leave to amend its answer is granted.

b. The Toussies' motion for leave to amend their complaint is denied.

c. Allstate's motion to compel is granted. The Toussies are directed to produce documents responsive to the defendant's sixth document request or, if no responsive documents exist, to submit an affidavit stating that they have not filed any tax returns for the years 2012, 2013, 2014, or 2015 that refer to their losses from Hurricane Sandy. The Toussies are also directed to respond to the defendant's tenth, eleventh, and twelfth interrogatories.

d. Finally, Allstate's motion for sanctions is granted. The defendant is awarded a total of $16,030.00 in attorney's fees and $1525.85 in costs.

So ordered.

_____/s/_____
Allyne R. Ross
United States District Judge

Dated:      May 13, 2019
            Brooklyn, New York