大成 DENTONS

Gary Meyerhoff

gary.meyerhoff@dentons.com
D +1 212 768 6740

Dentons US LLP
1221 Avenue of the Americas
New York, NY 10020-1089
United States

大成 Salans FMC SNR Denton McKenna Long
dentons.com

July 3, 2019

**VIA ECF**

The Honorable Cheryl L. Pollak
United States Magistrate Judge
United States District Court
for the Eastern District of New York
United States Courthouse
225 Cadman Plaza East
Brooklyn, New York 11201

Re: *Toussie v. Allstate Insurance Company*, Case No. 1:15-cv-5235-ARR-PK

Dear Magistrate Judge Pollak:

We write to address and correct misrepresentations made in Mr. Stern's letter of July 2, 2019 which could serve to influence the Court's now-Ordered *in camera* review of Plaintiffs' tax returns. We regret burdening the record with another letter, but Plaintiffs' new arguments are being improperly advanced as if there is a continuing discovery dispute (as opposed to multiple Orders that resolved the dispute). Those arguments, respectfully, warrant a reply.

Mr. Stern asserts that "the rationale for Allstate's demands was simple," offering a narrow "rationale" for seeking the tax returns and stating that "Allstate has what it was looking for -- namely an evidentiary admission" that the Toussies did not itemize their property loss claim. This is a "straw man" argument. Allstate never stated that its discovery rationale should be interpreted in this way. Plaintiffs' new argument is just a belated and self-serving *interpretation* of the document request itself, one that deceptively ignores what Allstate has actually stated on the record about the need for this discovery. Allstate does not seek discovery information to learn whether the Toussies itemized their casualty loss; Allstate seeks discovery into everything the Toussies told and did not tell the IRS regarding such loss.

Plaintiffs have known what was in their tax returns, including the level of detail they purportedly provided, all along. They did not attempt to make a "narrow rationale" argument in their objection to the document request, in the motion to compel briefing, or even in their Objection to the Report & Recommendation (filed by Mr. Stern on behalf of both Plaintiffs). Had they done so, Allstate assuredly would have responded to it directly. Even without being so prompted, Allstate already has offered far broader rationales for the relevance of Plaintiffs' tax returns. In its August 2, 2018 letter motion to compel (Dk. 225), Allstate stated to the Court:

> Unless Mr. Toussie lied under oath, the Toussies made representations to the
> IRS regarding the property that they lost, the value of such property, and the

大成 DENTONS

The Honorable Cheryl L. Pollak
July 3, 2019
Page 2

大成 Salans FMC SNR Denton McKenna Long
dentons.com

> insurance coverage that was expected to provide reimbursement for the loss. All of those subjects are central to this case . . . .
>
> Representations to the IRS (likely prior to September 2013) regarding the loss, such as what was lost and its value, whether property was lost to flood versus theft, and whether insurance coverage was expected, are highly relevant to the claims and defenses in this case.

Dk. 225, p. 4.

In Defendant's Response to Plaintiffs' Objection to Magistrate Judge Pollak's February 6, 2019 Report and Recommendation (Dk. 256), the Objection Mr. Stern filed, Allstate stated:

> The information the Toussies did or did not provide to the IRS in their tax filings is obviously relevant when one considers the chronology of events at issue. Plaintiffs did not submit the $3.9 million Theft claim until February 2015. That claim dwarfed all of Plaintiffs' other Sandy-related insurance claims combined. Allstate suspects that this claim may have been fabricated sometime between September of 2013 and February of 2015. The tax schedules at issue are the sole known instance in which the Toussies may have formally documented their theft and casualty losses and their expected insurance coverage before or after making their belated UPP theft claim to Allstate in 2015. These documents are relevant on that basis alone.
>
> They are also relevant in determining whether Mr. Toussie misrepresented a material fact about his insurance claim when he stated in court, under oath, that "[t]he IRS could verify that I lost over $50 million dollars." (Transcript, Dk. 31, 172:12-17.)
> * * *
> The tax schedule valuation Plaintiffs placed on property similar to the allegedly stolen items could also be relevant to whether Plaintiffs over-valued items on the Theft claim list. There are multiple grounds upon which to find the tax records at issue relevant, and Plaintiffs' objection fails to address any of them.

Dk. 256, pp. 17-18.

Plaintiffs thus already know that Allstate's rationale for seeking the tax returns is *not* the "straw man" Mr. Stern erects and knocks down. Even if the returns do not contain the kind of itemization Mr. Toussie claims was not provided to the IRS in his carefully crafted Declaration, *any description at all* of the circumstances surrounding Plaintiffs' Hurricane Sandy losses is relevant to the counterclaims. Such descriptions will either corroborate or contradict Plaintiffs'

大成 DENTONS

The Honorable Cheryl L. Pollak
July 3, 2019
Page 3

大成 Salans FMC SNR Denton McKenna Long
dentons.com

shifting story on whether they "lost everything." If there truly is only a lump sum claim made without itemization, the tax returns could include indicia of how this purported lump sum was calculated. Even the *absence* of detail or information could be relevant, for example, if Plaintiffs failed to state in 2012 that any losses were caused by theft or looting. The tax returns may include admissions, contradictions of other statements in the record, or admissions by silence, all of which will be relevant and proper discovery concerning the central issues in this case.[1]

As to the interrogatories, Plaintiffs offer no argument on Interrogatory 10 (identify tax preparer(s) and related information) other than to claim that Allstate really does not need the information. Allstate does not accept at face value the Toussies' claim that no itemization of the Toussies' casualty loss was done by anyone, including their accountants. Again, Plaintiffs cannot be trusted on this subject any more than they could be when they misrepresented that the boxes of property removed from 290 Exeter Street "currently are located at 285 Coleridge Street," while hundreds of boxes sat at CFASS. (Dkt. 71.) As to Interrogatories 11 and 12, those questions are not limited to providing only the information that may also have been presented in itemizations in the tax returns themselves. It is the absence of that detail (if it is really absent) that requires full responses to the Interrogatories. Unless Mr. Toussie picked the number $47 million for his casualty loss with absolutely no support or calculations, that is detail that must be provided in response to these interrogatories.

Tax returns are not sacrosanct. Production of returns should only be restricted where it is harassing, not where multiple cogent grounds for their relevance have been presented. Allstate respectfully requests that the Court consider all of the possible ways in which these returns could constitute relevant evidence or proper discovery under the broad discovery standards of this Court and order that they be turned over to Allstate, subject to the Protective Order already entered. Respectfully, to do otherwise would sanction the brand of litigation conduct that Plaintiffs are foisting upon this Court, which already Ordered that these returns be produced to Allstate unless they do not claim Hurricane Sandy losses.

Respectfully,

Gary Meyerhoff

cc: All parties of record (via ECF)

---

[1] Plaintiffs also continue to avoid producing the 2013, 2014, and 2015 returns without commenting at all on their contents in Mr. Toussie's declaration, or in any of the multiple letters the Court has received from Mr. Stern and Mr. Hamburger, even though my prior letter to the Court raised that issue. What was presented in the 2012 return may have been qualified or detailed in subsequent returns or filings, all of which would be responsive to the document request.