**Gary Meyerhoff**

gary.meyerhoff@dentons.com
D +1 212 768 6740

Dentons US LLP
1221 Avenue of the Americas
New York, NY 10020-1089
United States

大成 Salans FMC SNR Denton McKenna Long
dentons.com

August 1, 2019

**VIA ECF**

The Honorable Allyne R. Ross
United States District Court
for the Eastern District of New York
United States Courthouse
225 Cadman Plaza East
Brooklyn, New York 11201

Re:   *Toussie v. Allstate Insurance Company*, **Case No. 1:15-cv-5235-ARR-PK**

Dear Judge Ross:

      We write to respond Plaintiffs' July 30, 2019 letter objection to Magistrate Judge Pollak's July 26, 2019 Order (the "Objection") compelling Plaintiffs to provide to Allstate their redacted tax returns, and responses to Interrogatories 10-12.  Since Allstate has not seen the tax returns, it cannot respond to some of Plaintiffs' arguments.  But Allstate *can* respond to Plaintiffs' misleading characterization of the scope and purpose of the discovery requested:  a "straw man" they erect and knock down, hoping the Court has forgotten that it has already addressed and rejected Plaintiffs' now-recycled arguments.

      This Court's Orders, following multiple rounds of briefing and a prior appeal, expressly required Plaintiffs to produce their tax returns with only a narrow exception.  Production was not required *only* if an affidavit could be sworn that "they have not filed any tax returns for the years 2012, 2013, 2014, and 2015 that refer to their losses from Hurricane Sandy."  Report and Recommendation ("R&R"), Dk. 249, p. 42.  *See also,* 5/13/19 Order, Dk. 257, p. 16 (quoting the R&R and adding, "[p]lainly, if the Toussies' 2013, 2014, and 2015 tax returns do not include any claim of Sandy-related property loss, then the Toussies need not produce those returns.")  When Plaintiffs did neither, they were in contempt of those Orders.  They were not saved from contempt by the declaration of Robert Toussie, which Judge Pollak describes as "*at best* misleading." Order, Dk. 298, p. 4-5 (emphasis original).  Respectfully, there is no basis to object to Judge Pollak's Order that *redacted* versions of the tax returns be produced when the Court's prior Order adopting the R&R already requires that *full versions* of the tax returns be produced.

      In any event, Plaintiffs' current attempts to reargue blatantly misrepresent the scope and purpose of the discovery at issue.  Plaintiffs pretend that Allstate made rifle-shot requests for a tax return itemization or an Internal Revenue Service acknowledgement of the Toussies' losses that are not in their returns.  But Plaintiffs seek all documents "concerning" Mr. Toussie's representations about his tax returns, a distinction Allstate already raised.  (*See* Def. Reply, Dk.

大成 DENTONS

The Honorable Allyne R. Ross
August 1, 2019
Page 2

大成 Salans FMC SNR Denton McKenna Long
dentons.com

231, pp. 1-2).  There can be no doubt from the Court's existing Orders that the tax returns for 2012, 2013, 2014 and 2015 are responsive as long as they reference Hurricane Sandy losses.

Plaintiffs' narrow interpretation of the *rationale* for the discovery also cannot be credited. Allstate previously offered far broader rationales for the relevance of Plaintiffs' tax returns.  In its August 2, 2018 letter motion to compel (Dk. 225), Allstate stated to the Court:

> Unless Mr. Toussie lied under oath, the Toussies made representations to the IRS regarding the property that they lost, the value of such property, and the insurance coverage that was expected to provide reimbursement for the loss. All of those subjects are central to this case . . . .
>
> Representations to the IRS (likely prior to September 2013) regarding the loss, such as what was lost and its value, whether property was lost to flood versus theft, and whether insurance coverage was expected, are highly relevant to the claims and defenses in this case.

Dk. 225, p. 4.

In Defendant's Response to Plaintiffs' Objection to Magistrate Judge Pollak's February 6, 2019 Report and Recommendation (Dk. 256), an Objection Mr. Stern filed, Allstate stated:

> The information the Toussies did or did not provide to the IRS in their tax filings is obviously relevant when one considers the chronology of events at issue.  Plaintiffs did not submit the $3.9 million Theft claim until February 2015. That claim dwarfed all of Plaintiffs' other Sandy-related insurance claims combined.  Allstate suspects that this claim may have been fabricated sometime between September of 2013 and February of 2015.  The tax schedules at issue are the sole known instance in which the Toussies may have formally documented their theft and casualty losses and their expected insurance coverage before or after making their belated UPP theft claim to Allstate in 2015.  These documents are relevant on that basis alone.
>
> They are also relevant in determining whether Mr. Toussie misrepresented a material fact about his insurance claim when he stated in court, under oath, that "[t]he IRS could verify that I lost over $50 million dollars."  (Transcript, Dk. 31, 172:12-17.)
> * * *
> The tax schedule valuation Plaintiffs placed on property similar to the allegedly stolen items could also be relevant to whether Plaintiffs over-valued items on the Theft claim list.  There are multiple grounds upon which to find the tax records at issue relevant, and Plaintiffs' objection fails to address any of them.

大成 DENTONS

The Honorable Allyne R. Ross
August 1, 2019
Page 3

大成  Salans FMC SNR Denton McKenna Long
dentons.com

Dk. 256, pp. 17-18.

Allstate does not seek discovery regarding whether the Toussies itemized their casualty loss; Allstate seeks discovery into everything the Toussies told and did not tell the IRS regarding such loss.  *Any description at all* of the circumstances surrounding Plaintiffs' Hurricane Sandy losses is relevant to the counterclaims; it will either corroborate or contradict Plaintiffs' shifting story on whether they "lost everything."  Even the *absence* of detail could be relevant, for example, if Plaintiffs failed to state in 2012 that any losses were caused by theft or looting, or, as appears to be the case, Plaintiffs failed to inform the IRS that they expected the $1.6 million insurance recovery they are seeking in this case.  The tax returns may include admissions, contradictions of other statements in the record, or admissions by silence, all of which is relevant and proper discovery concerning the central issues in this case.

Judge Pollak reviewed the returns and found information "directly responsive" to Allstate's discovery and "related to the core issues in this case."  Dk. 298, p. 4.  Tax returns are not sacrosanct.  Requests for them are not harassing where, as here, there are multiple cogent grounds for their relevance.  Respectfully, the Court should consider all of the possible ways in which these returns are relevant under the broad discovery standards of this Court and again order that they be turned over to Allstate, subject to the Protective Order already entered.

As to Interrogatory 10, Allstate does not accept at face value the Toussies' claim that no itemization of the Toussies' casualty loss was done by anyone, including their accountants.  Respectfully, neither should the Court.  Plaintiffs cannot be trusted on this subject any more than they could be when they misrepresented that the boxes of property removed from 290 Exeter Street "currently are located at 285 Coleridge Street," while hundreds of boxes sat at CFASS.  (Dkt. 71.)  As to Interrogatories 11 and 12, those questions are not limited to providing only the information that may also have been presented in itemizations in the tax returns themselves.  It is the absence of that detail (if it is really absent) that requires full responses to the Interrogatories.  Unless Mr. Toussie picked the number $47 million for his casualty loss with absolutely no support or calculations, that is detail that must be provided in response to these interrogatories.

大成 DENTONS

The Honorable Allyne R. Ross
August 1, 2019
Page 4

大成  Salans FMC SNR Denton McKenna Long
dentons.com

  Plaintiffs' conduct has once again caused the Court and Allstate to waste further time and expense, this time on a matter that was resolved by the Court months ago.  Allstate does not want bring additional motions for sanctions at every turn, but it does not know of another way to police Plaintiffs' repeated and ongoing misbehavior, which continues after multiple written warnings from Magistrate Pollak and the imposition of monetary sanctions for similar discovery misbehavior.  It is apparent that even the specter of additional monetary sanctions is not enough to deter Plaintiffs and their new counsel from disobeying the Court's Orders and needlessly multiplying these proceedings.  Allstate respectfully requests the Court's direction on whether a sanctions motion seeking monetary and/or evidentiary sanctions, or even the striking of Plaintiffs' complaint in this action, would be appropriate at this stage.

            Respectfully,

            /s/ Gary Meyerhoff


cc: All parties of record (via ECF)